## AUGUST KRUG

*v.*

## ANN E. WARD.

1. PLEADING—*joinder of counts in trespass and case.* Under the recent change in our Practice Act, abolishing the distinction between the actions of trespass and case, counts in both these forms of action may be joined in the same declaration.

2. ARREST *out of the county.* Unless the party, against whom a warrant is issued for a criminal offense, has fled from the county, a constable of the county has no lawful authority to arrest him in another county, and if he does, both he and the party procuring the arrest will be liable for false imprisonment.

3. MALICIOUS PROSECUTION. The prosecution of a person, criminally, with any other motive than that of bringing a guilty party to justice, is a malicious prosecution. If made to procure the surrender of the prosecutor's note, it is malicious, in law.

4. SAME—*when malice is inferred.* If a criminal prosecution is shown to be witl. ut reasonable or probable cause, the jury may infer malice, but want of probable cause can not be inferred from proof of express malice.

5. EXCEPTION. If no exception is taken to the refusal of the court to give an instruction asked, it can not be assigned for error.

6. MEASURE OF DAMAGES—*in suit for malicious prosecution.* On the trial of an action for malicious prosecution and false imprisonment, evidence of the payment of an attorney's fee and expenses incurred in defending the criminal suit, is competent, and this, though the fee was paid by another for the plaintiff.

7. NEW TRIAL—*newly discovered evidence.* A new trial will not be granted on the ground of newly discovered evidence, when it is merely cumulative, and is not of a conclusive character.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

This was an action brought by Ann E. Ward against August Krug, for malicious prosecution, false imprisonment and slander. A trial was had. resulting in a verdict and judgment in favor of the plaintiff, of $2750 and costs. The other material facts of the case appear in the opinion of the court.

77  603
33a 130

77  603
36a 572
37a  29

77  603
137 545
77  603
63a 259
77  603
168 138
77  603
89a ¹643

77  603
100a ⁴ 55

77  603
114a ¹  7

Mr. B. B. SMITH, for the appellant.

Mr. G. VAN HOOREBEKE, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Plaintiff prosecuted the defendant before a justice of the peace of Clinton county, on a charge of bastardy, swearing, on the trial, that she was an unmarried woman; was pregnant; that the child, when born, would be a bastard, and that defendant was its father, and thereby caused him to be recognized to appear at the next term of the proper court, to answer to the charge. The case was compromised between the parties without any further litigation, the defendant giving the plaintiff his promissory note for $300.

Some two years afterwards, Emma Krug, the wife of the defendant, at his instance, went before the same justice of the peace before whom the case for bastardy was tried, and filed her affidavit, charging plaintiff with committing perjury on that trial, in swearing that the defendant was the father of her child, and praying that a warrant should issue for her arrest. At that time, and for some time previous thereto, plaintiff was and had been a resident of Marion county. On filing the affidavit, the justice of the peace issued his warrant for the arrest of the plaintiff, and placed the same in the hands of the defendant. He carried the warrant to one Rainey, a constable of Clinton county, placed it in his hands, and accompanied him to the place of residence of the plaintiff, in Marion county, where, by his direction, Rainey arrested her. For some reason, not satisfactorily disclosed by the evidence, Rainey subsequently released the plaintiff, but shortly afterwards placed the warrant in the hands of a constable of Marion county, who re-arrested her and placed her in Rainey's custody. Rainey then took her to the office of the justice of the peace in Clinton county by whom the warrant was issued, when, after some delay, she was tried and

acquitted of the charge. The present suit is brought in consequence of this prosecution and imprisonment, and for words spoken imputing that plaintiff had committed perjury.

The declaration contains seven counts. The first and second are for malicious prosecution, the third, fourth and fifth are for false imprisonment, and the sixth and seventh are for slander.

The plea was, not guilty.

A preliminary question to be considered is, whether case and trespass can be properly joined.

That such a joinder was improper, and could be assigned for error after judgment, at common law, is familiar to all acquainted with the rules of practice laid down in our elementary treatises. The common law rule, in regard to joinder, with some exceptions, which are not relevant to this question, was, as given in 1st Tidd's Practice (4th Am. Ed.), p. 12: "Wherever the causes of action are of the same nature, and may properly be the subject of counts in the same species of action, they may be joined, otherwise they can not."

But, by recent changes in our Practice Act, actions of trespass and actions of trespass on the case, are declared, indirectly, to be of the same nature, and what would, at common law, have been a cause of action in trespass, or trespass on the case, may now properly be the subject of counts in either form of action. R. S. 1874, p. 777, sec. 22. And it must, consequently, follow that counts for each may be joined in the same declaration.

Inasmuch as there is not the slightest pretense that the plaintiff fled, and was pursued by Rainey, the constable, from Clinton county to Marion county, his arrest of her in the last named county was without authority of law. *Kindred v. Stitt et al.* 51 Ill. 401. And the arrest having been made by the order of the defendant, he was equally guilty, with the constable, of the false imprisonment thereby occasioned.

That the prosecution was malicious, and without any reasonable or probable cause, we are well satisfied, from the

evidence. The preponderance of evidence is, that the defendant was the father of the bastard child of the plaintiff, and it is impossible to escape the conclusion, from reading the evidence, that the defendant caused his wife to file the affidavit charging the plaintiff with perjury, for the sole purpose of coercing her to surrender the promissory note which he had given her in settlement of the bastardy prosecution.

The justice of the peace swears that defendant asked him for a warrant for the plaintiff, and he learned from him she lived in Marion county. He further says: "He (defendant) said he did not want to file the affidavit, but said the person that did, did not know the facts positively. I asked him if the person could swear that they verily believed. Krug said he was the principal witness; * * * * that a lady had swore a child against him; that his wife knew it was not so, but that she could not swear to it, but would swear to the affidavit; that he would be the witness." This witness further shows the defendant went for his wife, brought her to his office, and had her swear to the affidavit. The whole thing was planned and carried out by him.

Allen swears the defendant went to the office of the justice of the peace, to get the warrant, first by himself, then returned home, got his wife, and she signed the affidavit at his request.

Rainey swears the defendant said to him that his wife had made the affidavit so that he could be a witness, and if anything should happen, they could not come on him for it.

The note that defendant had given plaintiff, it appears, was assigned by her to her step-father, one Swain, who had brought suit on it in the circuit court of Clay county, and which was pending for trial at the time the prosecution for perjury was gotten up. Allen testifies, "he (defendant) said he had a suit in Clay county—against the girl, I inferred. I afterwards learned, as I recollect, that it was about money for Swain, as assignee. He said he wanted her arrested before that trial."

When Rainey arrested the plaintiff, as she testifies, the defendant told her if she would give up the note, he would say

nothing more about prosecuting her for perjury; that he would let her go; but if she did not, he would send her to the penitentiary.

Rainey's evidence fully corroborates hers in this respect. He says: "She (plaintiff) was in the wash-room, and when she came in, he (the defendant) said to her: 'Annie, this is an officer; he has a warrant to arrest you; you have sworn falsely; you know I never done anything to you; that child is not mine.' She said: 'Mr. Krug, it is yours; I never swore falsely, for no one ever touched me but you.' He said: 'You did swear falsely; and don't you know that will penitentiary you?' She was crying, and seemed to me to be scared. He told her if she would relieve him of a certain note, that he would let it go—that he would drop it; otherwise, she might have to go to the penitentiary. She spoke something about having transferred it to some one else. He told her that, if she didn't, she would have to go to the penitentiary; and then he ordered me to arrest her, and I did."

There is no excuse for such conduct. A great wrong is not only thereby done to the individual whose rights are thus violated, but the majesty of the law itself is outraged in a manner that affects the safety of all; for, instead of being a shield for the protection of innocence, it is made an engine of violence and oppression for cunning and unscrupulous hands. The attempt to justify this procedure by the advice of legal counsel, utterly fails. The State's Attorney, Mr. Kingsbury, to whom the defendant applied for advice, swears, in distinct and positive language, that he advised him not to commence the prosecution. Having been his counsel in the bastardy trial, he knew what the evidence was, and he told the defendant he could not make a case against the plaintiff. Notwithstanding this, however, he proceeded with the suit, doubtless trusting that he might so work upon the plaintiff's fears as to obtain the note, when he could abandon the prosecution, but thinking that, at all events, he could screen himself from responsibility behind the name of his wife.

Although some of the instructions given at the instance of the plaintiff are liable to criticism, the instructions, taken as a whole, present the law fairly for the defendant, and he has no just cause to complain.

The objection to the first of plaintiff's instructions, that it does not require the jury to find the defendant did cause the plaintiff's arrest, would be fatal if that fact were disputed; but it is not. All the evidence shows the arrest was caused by the defendant, and he does not pretend to deny it. The jury could not, therefore, possibly have been misled, to the defendant's prejudice, on this point, by the instructions.

With regard to the other instructions, relating to the malicious prosecution, it is sufficent to say, the prosecution of a person, with any other motive than that of bringing a guilty party to justice, is a malicious prosecution, in law. *Stevens* v. *The M. C. Ry. Co.* 26 English Law and Equity R. 410; and the evidence showing that the prosecution was without reasonable or probable cause, the case was fully made out. Moreover, this court has held in numerous cases, and in conformity with all the common law authorities, where it is proved the prosecution is without reasonable or probable cause, the jury may infer malice, although want of probable cause can not be inferred from proof of express malice. *Thompson* v. *Force*, 55 Ill. 370; *Chapman* v. *Cawrey*, 50 id. 512; *Israel* v. *Brooks*, 23 id. 575; *Ross* v. *Inniss*, 35 id. 487.

We deem further comment in regard to the instructions unnecessary. We can not think any change authorized by the law, in their phraseology, would have induced or warranted the jury to find otherwise than as they did.

No exception seems to have been taken to the refusal of the court to give the defendant's thirteenth instruction. The objection to that ruling can not, for that reason, be considered.

The objections growing out of the admission of evidence may be briefly disposed of.

The record shows Sharp did testify what defendant's wife said in regard to the source and character of her information, when she filed the affidavit for the warrant against plaintiff; and the defendant neither excepted nor does there appear to have been any reason why he should have excepted to any ruling of the court in that regard. He had the full benefit of the evidence, and this was all he desired.

The evidence of the payment of the $20 for attorney's fee and expenses of witnesses for plaintiff, in her defense in the trial for perjury, was competent. The expenses were incurred for her, in consequence of the prosecution, and she was entitled to recover the amount of the defendant. As we understand the evidence, although this amount was paid by the plaintiff's step-father for her, it was not a gift, but a payment simply of money for her use, for which she is legally liable to repay him.

The character of the contract between plaintiff and her attorney is totally irrelevant to the present suit. It will be time enough to adjudicate upon its validity when, if ever, a controversy shall arise thereon between the plaintiff and her attorney. At present, we have only to deal with the merits of the plaintiff's claim against the defendant, and they can neither be strengthened nor weakened by reason of contracts she may have made in the employment of her attorneys.

Defendant filed his affidavit for a new trial, on the ground that he had discovered, subsequent to the trial, that he could prove, by one Vincent, that plaintiff said to him she had admitted, in the presence of defendant and his wife, that the defendant was not the father of her child. Had this evidence been introduced, it would, by no means, have been conclusive. It was not an admission that the defendant was not the father of her child, but simply of what she had admitted on that subject. That admission may have been extorted by apprehended violence, or by reason of the defendant's improper influence over the plaintiff, obtained in some other way. It was liable to be explained or contradicted. Besides, 39—77th Ill.

the. defendant testified to the same admission, and the evidence of Vincent would have been but cumulative. The motion was properly overruled. · *Calhoun* v. *O'Neal,* 53 Ill. 354; *Adams* v. *The People,* 47 id. 376; *Ritchie* v. *West,* 23 id. 385; *Martin* v. *Ehrenfels,* 24 id. 189.

The verdict in this case, though large, we can not regard as so excessive as to ·justify the granting of a new trial. The defendant is shown to be a man of considerable· wealth. It is fitting that, in him, an example should be made to vindicate the law, and teach others that the criminal code can not be resorted to for the gratification of personal malice, or the attainment of dishonorable personal ends, without surely bringing upon him who thus resorts to it, the most serious consequences. What might be a severe punishment, in the way of a judgment for damages, against a very poor man, to him would, doubtless, be trifling and insignificant. While it is important to guard against wholesale confiscations in suits of this character, it is equally important that it shall be understood the possession of wealth gives to him who would override the law with strong hand, no advantage over his less fortunate neighbor in the acquisition of property.

The judgment is affirmed.

*Judgment affirmed.*