Sernetta J. McCoy *et al.* Exrs., Plaintiffs in Error, *vs.* The Union Elevated Railroad Company *et al.* Defendants in Error.

*Opinion filed February 16, 1916.*

1. Damages—*the benefits resulting from increased travel are proper to be considered.* In determining whether premises have been damaged by reason of the construction and operation of an elevated railroad in a city, the benefits to the premises by reason of increased travel in front of the same, resulting from the operation of the railroad, are proper to be considered. (*Brand* v. *Union Elevated Railroad Co.* 258 Ill. 133, and *Geohegan* v. *Union Elevated Railroad Co.* 258 id. 352, and 266 id. 482, adhered to.)

2. Same—*fact that value of property for certain purpose is decreased is not material.* In an action for damages to premises by the construction and operation of an elevated railroad, the only issue before the jury is the effect of the construction and operation of the railroad upon the market value of the premises, and the fact that the rental value of the building for the purpose it was used when the railroad was constructed may have been decreased or destroyed is not material if the general market value of the premises has increased.

3. Same—*when permitting proof of increase in value covering a period of eight years is not error.* Where an action for damages to premises from the construction and operation of an elevated railroad is not begun until five years after the railroad was built and is not tried until twelve years later, it is not error to permit the defendant to prove the steady increase in market value of the premises for a period of eight years after the railroad was constructed and put in operation.

Cartwright, J., dissenting.

Writ of Error to the Superior Court of Cook county; the Hon. Hugo Pam, Judge, presiding.

John S. Miller, and Harry S. Mecartney, for plaintiffs in error.

Addison L. Gardner, Randall W. Burns, and Francis Walker, (Roger L. Foote, of counsel,) for defendants in error.

Mr. Justice Cooke delivered the opinion of the court:

On September 27, 1902, William A. McCoy brought an action on the case in the superior court of Cook county against the Union Elevated Railroad Company, the Lake Street Elevated Railroad Company, the South Side Elevated Railroad Company, the Northwestern Elevated Railroad Company and the Metropolitan West Side Elevated Railroad Company, the defendants in error, to recover damages alleged to have been occasioned to certain real estate by the construction of the elevated structure in VanBuren street, in the city of Chicago, and the operation of trains thereon by the defendant companies. A trial was had before a jury during the month of February, 1914, and resulted in a verdict finding the defendant companies not guilty, upon which judgment was rendered in favor of the defendants. McCoy having died subsequent to the rendition of the judgment, his executors have brought the record here for review by writ of error.

The real estate involved consists of lots 21 and 22 and the east twenty-five feet of lots 20 and 23, in block 115, in School Section addition to the city of Chicago. At the time of bringing suit and until some time during the year 1910 McCoy held a 99-year lease upon lots 21 and 22 which he had obtained during the years 1882 and 1883, the term of the lease beginning May 1, 1883. These two lots combined have a frontage of one hundred and eight feet on Van-Buren street and ninety-five feet on Clark street. After obtaining the lease McCoy proceeded to erect upon the lots a seven-story and basement brick and stone building, which

was completed about June 1, 1884. The ground floor of the building was divided into rooms appropriate for use as retail stores, barber shops, and the like. The remainder of the building was designed for use as a hotel, and McCoy used it as such, under the name of the McCoy Hotel, from the time the building was erected until some time during the year 1910, when he sold his interest in the premises. Shortly after the erection of the hotel building by McCoy the owner of the twenty-five feet adjoining this property on the west, being the east twenty-five feet of lots 20 and 23, constructed thereon a seven-story and basement building corresponding in height and general plan of construction with the McCoy building. In 1887 McCoy purchased this twenty-five feet, with the building thereon, for $100,000, and thereafter used the rooms above the ground floor in connection with and as a part of the McCoy Hotel. Prior to 1897 three elevated railroad systems had been established in Chicago, with down-town terminals. The South Side system had its terminal at Congress street, on the alley between State street and Wabash avenue, about three blocks east and south from the premises in question; the Metropolitan system had its terminal on Franklin street between VanBuren and Jackson streets, about three blocks west and north from the premises in question; and the Lake Street system had its terminal at Lake street and Wabash avenue, about one-half mile east and one mile north from the premises in question. During the years 1896 and 1897 what is generally known as the "loop" was constructed, under authority conferred by ordinances of the city of Chicago, for the joint use of the three systems above mentioned and another elevated system then in course of construction. The loop consists of an elevated structure in the streets encircling the central portion of the business district of the city, upon which are laid tracks for the passage of the elevated trains of all of the defendant companies completely around the central portion of the business district. Be-

fore the construction of the loop the elevated trains of the defendant companies stopped at their respective terminals. The structure forming the south side of the loop was placed in that portion of VanBuren street extending from Wabash avenue on the east to Fifth avenue on the west, Clark street being one of the streets intersecting VanBuren street between these two avenues. Stations to permit passengers to board and leave the elevated trains were established at intervals around the loop and stairways were constructed leading from each station to the surface of the street. One of these stations in VanBuren street was established at LaSalle street, about one hundred feet west from the McCoy Hotel, and another was established at Dearborn street, about three hundred feet east from the hotel. The elevated structure in VanBuren street obstructed the passage of light to the store rooms in McCoy's building, and the noise from the passage of trains over the structure and the fact that passing trains were on a level with the windows of the second floor of the building rendered the rooms on the south side of the second and third floors of the building less desirable for hotel purposes. Large upright columns supporting the elevated structure were placed just inside the curb in front of the premises and rendered the premises less accessible from the street.

There is no material controversy over the facts in the case. The witnesses all agree that the matters above mentioned, when considered by themselves, would be detrimental to the premises. They also agree that there was a steady increase of from five to ten per cent per year in the value of the premises from the construction of the loop until 1905. It also appears from the evidence that the rents from the store rooms on the ground floor constantly increased after 1897. The plaintiff called but one real estate expert as a witness. He testified that the damages to the property from the construction of the elevated structure, and the operation of the trains thereon, amounted to $81,999,

being fifteen per cent of the value which the witness placed upon the interest of. McCoy in the premises. He admitted that there had been a continuous increase in the value of the premises since the completion of the loop, and that a portion of that increase, which he said it was impossible to estimate, was due to the increased travel brought to the premises by the elevated railroad, but that he did not take that into consideration in fixing the damages. The real estate experts called by the defendants, on the other hand, testified that at least one-half of the increase in the value of the premises was due to the increased travel in front of the premises resulting from the operation of the elevated railroad in VanBuren street as a part of the loop. In support of the testimony of these witnesses defendants proved that the number of persons boarding the elevated trains at the LaSalle street station, in VanBuren street, during the three months of the year 1897 in which trains were operated around the loop, was 161,763, and that the number constantly increased until in 1905 there were 3,659,583 persons who boarded the trains at that station. It was also shown that during the period in 1897 above mentioned 194,904 persons boarded the elevated trains at the Dearborn street station, in VanBuren street, and that the number constantly increased each year until in 1905 there were 2,558,976 persons who boarded the trains at that station.

The contention made by plaintiffs in error upon which most of the assignments of error depend is, that the benefits to the premises by reason of the increased travel in front of the premises resulting from the operation of the elevated railroad in VanBuren street as a part of the loop cannot be considered in determining whether the premises have been damaged by the construction of the elevated structure and the operation of trains thereon, first, because such benefits are general benefits, common to all the property in the vicinity; and second, because such benefits are

conjectural and speculative. The same contention was made in *Brand* v. *Union Elevated Railroad Co.* 258 Ill. 133, *Geohegan* v. *Union Elevated Railroad Co.* 258 id. 352, and *Geohegan* v. *Union Elevated Railroad Co.* 266 id. 482, and in each of those cases we held that such benefits should be considered in determining whether premises abutting on a public street have been damaged by the construction and operation of an elevated railroad in such street. The reasons for such holding were fully set forth in the opinions filed in the cases above mentioned and it would serve no useful purpose to repeat them here. It is sufficient to say that we adhere to the views expressed in the former cases involving the same question as is here presented.

The constitutional objections urged are all based on the contention that the rule announced in *Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362, which was followed in the *Brand* and *Geohegan cases, supra,* was not in accordance with the former decisions of this court upon the question of setting off benefits against damages. The decisions upon this question preceding the *Stickney case* were considered in the *Brand case, supra,* and it was there determined that the rule announced in the *Stickney case* was in harmony with all the prior decisions of this court except one. We have again examined the cases cited by plaintiffs in error in support of their contention and are satisfied with the conclusion reached in the *Brand case* upon this question.

The plaintiff called as a witness in his behalf an architect, who testified that he had made a specialty of remodeling hotels; that the value of the McCoy Hotel building in 1895 and 1896, based upon his knowledge of the cost of constructing buildings during those years, was $126,000; that he was familiar with the rental value of hotels in Chicago during the same years, and that in his opinion the annual rental value of the McCoy Hotel building, exclusive of the store rooms, was about $33,000. He expressed the

opinion that the hotel building was an appropriate improvement for the ground at that time, and stated that the elements which entered into the value of a building for hotel purposes were the absence of noise, the privacy of the rooms and the architectural beauty of the building. He was permitted to further express the opinion that the construction of the elevated railroad in front of the premises and putting the same into operation had a detrimental effect upon the market value of the premises for use as a hotel because the elevated structure marred the appearance of the building, the running of trains produced noise and the privacy of the rooms facing the structure was lessened. He was then asked to express an opinion as to the effect of the construction and operation of the elevated railroad on the rental value of the hotel premises in dollars and cents, but the court sustained an objection to the question. Plaintiffs in error contend that this action of the court was erroneous. The only issue before the jury was the effect of the construction and operation of the elevated railroad upon the market value of the premises. The question whether the rental value of the building for hotel purposes had been lessened was not involved, and the admission of such testimony would only have tended to confuse the jury. The evidence on the part of defendants in error tended to show that while the rooms facing the elevated structure on the second and third floors of the building were rendered less desirable for hotel purposes than they were before the erection of the structure, they were rendered more valuable for other purposes than they previously were for hotel purposes. This witness only qualified as an expert upon the rental value of buildings for hotel purposes, and the question necessarily called for his opinion regarding the rental value of the McCoy building for hotel purposes. The rental value for such purposes might have been totally destroyed by the construction and operation of the elevated railroad while the market value of the premises might at the same

time have been increased. The court did not err in refusing to permit proof to be made concerning the effect of the construction and operation of the elevated railroad upon the rental value of the premises for hotel purposes.

The same witness, having failed to qualify as an expert upon ground values, was asked to assume a ground value of $5000 per front foot on VanBuren street, or nearly $600,000 for the land, (that being the value fixed by the real estate expert called by the plaintiff,) and give an estimate of the effect of the construction of the elevated railroad upon the market value of the premises for hotel purposes. The court properly sustained an objection to this question, as the question limited the estimate to the effect of the construction of the elevated railroad upon the market value of the premises for hotel purposes instead of the effect of the construction and operation of the railroad upon the market value generally.

Defendants in error were permitted, over the objection of plaintiff, to prove the constant increase in the market value of the McCoy premises from the construction of the elevated railroad in VanBuren street until 1905, a period of about eight years, and were also permitted to prove sales and long-term leases of other premises similarly situated, in the vicinity of the McCoy premises, during the same period. Plaintiffs in error contend that the court should have limited such evidence to a shorter period after the completion of the elevated railroad. In *Geohegan* v. *Union Elevated Railroad Co.* 266 Ill. 482, we said: "The rule is well established that evidence of the value of the property before and after the time when the damages are alleged to have been sustained is admissible, and the time within which such evidence shall be confined is a matter in the sound discretion of the trial court." In our judgment the trial court did not abuse its discretion in this case. The suit was begun in 1902, almost five years after the alleged cause of action accrued, and the trial was not had until February,

271 – 32

1914. While the jury were required to find whether or not the premises were damaged as of the date when the railroad was completed and put in actual operation, the beneficial effects from the construction and operation of the elevated railroad upon the property appeared with greater certainty when it was shown that there was a constant and continuous increase in the market value of this property, and of property similarly situated in that locality, for a period of eight years.

It is urged that the court erroneously excluded evidence offered by plaintiff by which it was sought to show certain elements which after the construction of the elevated railroad entered into the increase in the market value of the premises, viz., increase in the population of the city, increase in bank deposits, increase in wholesale trade and manufacturers and increase in street car travel in the city of Chicago. The only attempt to prove these matters was by a witness who stated that his testimony would be based upon data contained in certain reports made by others and as to the correctness of which the witness had no personal knowledge. The court did not err in rejecting this evidence, as it was hearsay.

Complaint is made of the action of the court in giving certain instructions on behalf of defendants in error and in refusing or modifying certain instructions submitted by plaintiff. Practically all of these instructions were considered by us in the *Brand* and *Geohegan cases, supra,* and the trial court, in passing upon the instructions in this case, followed our rulings in those cases. Moreover, the evidence in this case would not have sustained a verdict in favor of the plaintiff, and any error committed by the trial court in giving, refusing or modifying instructions was therefore harmless.

The judgment of the superior court is affirmed.

*Judgment affirmed.*

·Mr. Justice Cartwright, dissenting: .

My understanding of the law is, that if a corporation authorized to take or damage property for public use by the construction and use of the public work injures the property of the citizen for the use to which he. has devoted his property it must pay the damage; that the corporation has no right to compel the owner to change the use to which his property is applied or meet his claim by showing that the property would not be damaged if devoted to some other use. The court has laid down that rule in various cases, and has frequently said that by any other rule the owner would not be compensated for his damage nor receive the just compensation to which he is entitled. In the case of *St. Louis, Jerseyville and Springfield Railroad Co.* v. *Kirby,* 104 Ill. 345, Kirby had devoted his farm land to a special use as a training track, and in reply to the objection that what the training track was worth to him was not the true measure of damage, the court replied: "Why not? It is said he cannot recover for damage to his business. That may be true in so far as his business does not consist in the use of the land. The value of land consists in its fitness for use, present or future, and before it can be taken for public use the owner must have just compensation. If he has adopted a peculiar mode of using that land by which he derives profit, and he is to be deprived of that use, justice requires that he be compensated for the loss. That loss is the loss to himself. It is the value which he has, and of which he is deprived, which must be made good by compensation." In *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 413, the court reversed the judgment of the trial court because of the refusal to allow proof that the property sought to be condemned had a special value above the general market value. The court quoted what was said in the *Kirby case,* with a statement that it was there held competent to show that the land pro-

posed to be taken has a special value to the owner by reason of a special profitable use to which he has devoted it, and that he is entitled to compensation for the loss occasioned by deprivation of that special use. In *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589, the court again made the above quotation from the *Kirby case,* and held that the owner of property has a right to the value which his property has in view of the particular use of it which he has adopted. The court said that the owner of property is entitled, under the constitution, to whatever the property is worth to him and is not required to make any pecuniary sacrifices at all. In illustration of the justice and propriety of the rule adopted, the court supposed that the owner of a farm concludes to go into the dairy business and spends several thousand dollars on his farm in preparing the necessary stalls and sheds and making suitable preparations for the handling of milk and converting it into butter and cheese. The court said it was very clear that when the farm was fitted up for that purpose it would have a special value to the owner that it would not have for mere farming purposes. The owner of the farm, under such circumstances, could not be required to change the use of his farm and the court would have no right to dictate to him that he should. In *Hercules Iron Works* v. *Elgin, Joliet and Eastern Railway Co.* 141 Ill. 491, the court again indorsed the doctrine of the previous cases that the recovery of damages must be upon the basis of the actual value taken from the owner; that it is the value which the owner has, and of which he is deprived, that must be made good to him. In *Sanitary District* v. *Pittsburgh, Ft. Wayne and Chicago Railway Co.* 216 Ill. 575, the court again stated the rule that where property, by reason of being applied to a particular use, has a special value to the owner, that value is to be ascertained and allowed as compensation; and in *Freiberg* v. *South Side Elevated Railroad Co.* 221 Ill. 508, the same

doctrine was applied. These decisions, as I understand, have settled the law beyond controversy.

In this case William A. McCoy had a leasehold interest in lots upon which he had erected a building for use as a hotel, with a frontage of 108 feet on VanBuren street, and he owned in fee 25 feet on the west which was covered by his hotel, making a frontage of 133 feet on Van-Buren street. An elevated railroad was built in VanBuren street, supported by large columns, rendering the premises less accessible from the street and obstructing the passage of light and air to the first story, and, the railroad being put in operation, the noise from the passing trains on a level with the windows of the second floor of the hotel rendered the rooms on the south side of the second and third floors practically unfit for hotel purposes. There was no controversy over the fact that the property was seriously injured and damaged for the purpose to which the owner had devoted it. To meet this undisputed evidence the court admitted evidence that the property would not have been damaged if McCoy had devoted it to some other use. The evidence was, that for the eight years after the damage was done the business of the road increased enormously, necessarily increasing the discomforts, annoyances and damage to the property for hotel purposes, but the witnesses said that the increased number of trains and passengers benefited the property for some other use. The plaintiff called as a witness an architect familiar with hotel buildings and their rental value, and after he had testified that the construction and operation of the elevated railroad in VanBuren street were a damage to the market value of the property for use as a hotel, the court sustained an objection to giving his judgment as to the amount of injury. The same witness being asked to give an estimate of the effect of construction and use of the elevated railroad on the market value of the premises for hotel purposes on the assumption of a ground value of a certain amount, the

court sustained an objection. This court, in the opinion adopted, sustains the rulings of the trial court, and holds that the question whether the rental value of the building for hotel purposes had been lessened was not involved; that the evidence on the part of the defendants tended to show that while the rooms facing the elevated structure on the second and third floors were damaged, they were rendered more valuable for other purposes than they previously were for hotel purposes; that the rental value for hotel purposes might have been totally destroyed by the construction and operation of the elevated railroad while the market value of the premises might at the same time have been increased, and that the court properly sustained the objection to the hypothetical question assuming a certain value of the land, because it related to the market value of the premises for hotel purposes. I do not agree with the opinion on that subject.

The trial court required witnesses to qualify as so-called experts on market values in order to enlighten the jury by opinions on that subject, which was contrary to the rule of law. The market value of real estate, where it can fairly be said to have a market value, is a fact to be proved as any other fact. It is not a question of art or science, and any person who is familiar with the land and has an opinion as to its value is competent to express that opinion. An expert is not required, but, where there is equal credibility, superior opportunity and intelligence would, of course, be entitled to the greater weight, and what weight is to be given to the opinion of a witness is for the jury. *White* v. *Hermann,* 51 Ill. 243; *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 id. 290; *Pike* v. *City of Chicago,* 155 id. 656; *Johnson* v. *Freeport and Mississippi River Railway Co. supra.*