**The Department of Public Works and Buildings of the State of Illinois for and in Behalf of the People of the State of Illinois, Plaintiff-Appellant, v. Donald E. Oberlaender, Defendant-Appellee.**

Gen. No. 66–115.

Third District.

February 16, 1968.

William G. Clark, Attorney General, of Springfield, Charles Blachinsky, of Kewanee, James J. Coryn, of Rock Island, and Richard Quinn, of Peoria, for appellant.

Herbert M. Spector, of Rock Island, and James A. Dooley, of Chicago, for appellee.

STOUDER, J.

The Department of Public Works and Buildings of the State of Illinois commenced this eminent domain proceeding on the 3rd day of January, 1964, in the Circuit Court of Henry County for the acquisition of land for the improvement of Interstate Route 80. The land sought to be acquired is a forty-four (44) acre tract being a part of a two hundred sixty-nine (269) acre tract owned by respondent, Donald Oberlaender. A cross petition claiming damages to property not taken was filed by respondent but withdrawn shortly before trial. Judgment of $600,000 was entered on the verdict and it is from this judgment that the State appeals.

The trial court denied the State's motion for a new trial. In seeking to reverse such order the State contends the judgment is based on erroneous and prejudicial rulings of the trial court made during the course of the trial.

The entire tract owned by respondent and his father before him had been used as a part of a sand quarry

for more than fifty years. The sand deposits are in banks or dunes requiring the removal of little overburden to secure access thereto. The thickness of the deposits varies from place to place and there is considerable conflict in the evidence concerning the quantities of the sand deposits underlying the entire tract and the part taken, the estimates of the deposits of sand underlying the land taken ranging from 1,300,000 tons to more than 3,600,000 tons. In respondent's operation the sand may be loaded directly onto trucks and transported to the customer or it may be hauled to a railroad spur about three blocks from the property where it may be dried if required by the customer and then transported either by rail or truck.

Evidence was introduced concerning the nature and character of the sand on respondent's property, its actual and potential uses and the ways in which the sand deposits on respondent's property differed from those on similar property.

Evidence of a similar sale of 50 acres of land containing sand deposits near Savanna, Illinois, was introduced. Such land at the time of the sale was being used for sand quarrying and the quantity of the deposits was estimated at 1,000,000 to 1,500,000 tons.

The State's valuation witness valued the tract taken at $56,000. The opinions of respondent's valuation witnesses ranged from $500,000 to $625,000.

The State's assignments of error, which we shall first consider, are those relating to rulings of the trial court concerning the State's valuation witnesses. The first of these was William Franzan, a resident of Rockford, Illinois. He described his qualifications at length including education, licensing as an Illinois real-estate broker, membership in professional appraisal associations, and teaching in the field of appraisals at several universities. His principal occupation was that of professional ap-

praiser and he described his experience in this field which included the appraisal of real estate of various kinds in several states and northern Illinois. Such experience included the appraisal of mineral lands in northern Illinois which were made for both private owners and governmental agencies. He described his knowledge of real estate values in the Henry County area indicating his knowledge had come from appraisals of property in the county and from information supplied by brokers, buyers and sellers. He described his inspection of the premises of respondent and the factors which he considered in arriving at his opinion of value. When asked whether he had an opinion concerning the market value of respondent's entire tract, an objection that such question was immaterial was sustained. The witness was then asked whether he had an opinion concerning the value of the forty-four (44) acre tract taken considered as a part of the whole. An objection was interposed to this question because of insufficient foundation. Before ruling on the objection the trial judge questioned the witness concerning appraisals the witness had made in northern Illinois. Thereafter the court sustained the objection to the question.

The State argues that Franzan was a competent witness to express an opinion of value and that it was error for the trial court to exclude such opinion. The objection of respondent's counsel was not to the form or content of the question. The nonspecific objection of insufficient foundation relates to the competence of the witness to answer the question. Neither the objection of respondent's counsel nor the questions propounded by the trial judge indicate precisely the reasons for or the basis of the court's ruling sustaining the objection. It does appear the trial judge was interested in ascertaining whether the appraisals of northern Illinois real estate made by the witness were based on his experience as broker, buyer or seller. Since the answers to the

questions propounded by the trial judge indicated that the witness did not participate in any of the northern Illinois real estate appraisals as broker, buyer or seller we believe it can fairly be concluded that the absence of such participation was the basis for the trial court's ruling. Indeed the parties do not seriously question this conclusion.

██ The general rule is that a witness may express his opinion as to value of real estate where it appears his opinion of value is based on some peculiar competence not possessed by the general public. The ownership or the buying and selling of generally similar real estate in the area, is considered sufficient to entitle a witness to express an opinion of value. However these criteria are not the exclusive criteria for establishing the peculiar competence of a witness required by the rule. In fact respondent does not argue that ownership of or participation in sales in the area are the only criteria for determining the competence of a valuation witness, since the same objection would be applicable to at least three of respondent's own valuation witnesses. The opinion of a professional appraiser is competent when based on his own inspection of the premises and his knowledge of the general value of real estate in the area. Department of Public Works and Buildings v. Divit, 25 Ill2d 93, 182 NE2d 749. It is the methods and principles of appraising which establish the peculiar competence of a professional appraiser and not the detailed knowledge of any particular use of the land. Respondent relies heavily on City of Chicago v. George F. Harding Collection, 70 Ill App2d 254, 217 NE2d 381 (Petition for Leave to Appeal denied, 35 Ill2d 87), in support of his contention that the general competence of the witness Franzan as a professional appraiser did not extend to a valuation of the property here involved. We approve of the reasoning in the aforementioned case but do not believe it is applicable to the instant case. In the George F. Harding Collection case

the property sought to be acquired was a museum. By stipulation it was agreed that the museum property constituted a special use and that the value of the property was to be determined by its replacement cost. The witnesses testifying in behalf of the condemning authority, a construction engineer, an architect and three real-estate brokers, none of whom were professional appraisers, indicated that their opinions of replacement costs were based on the belief that a smaller building of different construction would be adequate for the museum's needs. The court held that although such witnesses were competent to testify to the replacement costs of the building such competence did not extend to a determination of the needs of the museum.

██ ██ In the instant case it is not contended that respondent's property is a special use property nor could such contention be supported. The degree of familiarity with the uses to which land is adaptable is a matter of credibility and not of competence. We believe the trial court erred in excluding the opinion of witness Franzan.

The other valuation witness for the State was Truman Esmond. On direct examination he expressed the opinion that the value of the land taken was $56,000. On cross-examination the witness was asked whether he had told the respondent that he had appraised the tract taken at $80,000. After receiving a negative reply respondent's counsel requested that the State be directed to produce all appraisal documents of the witness in the State's possession. Over its objection, the State was ordered to produce such documents. Respondent's counsel then proceeded to cross-examine the witness on the basis of such appraisal documents and it appears that some figure of $80,000 did appear in such documents. From the cross-examination relating to the appraisal reports, it does not appear the witness had appraised the tract taken for $80,000. Although a $75,000 figure is mentioned in such reports such appraisal did not relate

to the value of the tract taken but included the value of buildings or some portion thereof not located on the tract taken, but which, under a possible theory of damage, might have been considered a part of the whole.

▪ In arguing that the trial court erred in ordering the production of the appraisal reports, the State relies on City of Chicago v. Harrison-Halsted Bldg. Corp., 11 Ill2d 431, 143 NE2d 40, and contends that the principle of the aforementioned case is retained in Supreme Court Rule 201. Respondent argues that production of the documents is warranted under the authority of Monier v. Chamberlain, 35 Ill2d 351, 221 NE2d 410, decided shortly before the adoption of Rule 201. Although dealing with pretrial discovery the Monier case adopts the view that disclosure rather than nondisclosure better suits the methods and goals of a trial. In broadening the area of disclosure to include areas which theretofore might not have been deemed included, the purpose is achieved in part by reducing matters excepted from disclosure described as matters privileged against disclosure at trial. As described in the Monier case we do not believe that the reports of appraisers can be deemed the work product of an attorney. On the contrary such reports appear to us to be in the same category with the reports or statements of any other person not a party to the action possessing facts or information relevant to the issues in controversy. Accordingly we believe the trial court committed no error in ordering the production of the documents.

The assignments of error next urged by the State relate to rulings of the trial court on evidence presented by Respondent. The first of such errors relates to the materiality of the value of the entire tract owned by Respondent. This question arises in two ways. After Respondent's valuation witnesses testified concerning their qualifications and knowledge of the land taken they were each asked whether they had an opinion of the value

183

of the tract taken considered as a part of the whole tract. Objection was made to the question by the State on the ground the witness was incompetent or unqualified to express an opinion on the value of the part taken considered as a part of the whole in the absence of any prior testimony that the witness had knowledge of the value of the whole tract. The objection was overruled and the witness was permitted to express his opinion on the value of the tract taken considered as a part of the whole tract. On cross-examination, Respondent's valuation witnesses were asked questions relating to their knowledge of the value of the entire tract of Respondent, objections to such questions being sustained by the trial court.

The question first arises as to the competence of the witness to express an opinion as to value under the circumstances, and secondly, whether, if the expression of value is competent, cross-examination relating to the witness' knowledge of the value of the entire tract is properly excluded.

 The "just compensation" to which the owner of property is entitled by the Constitution is that which places the owner of property in as good a position financially after the property is taken and improvement made as he was prior thereto. Where the property taken is an entire tract the fair cash market value of the property is the measure of "just compensation." Where the property taken is less than an entire tract, other considerations arise. The highest and best use of the part taken may be as a separate and distinct piece of property unrelated to the entire property endowing such part with a fair cash market value. On the other hand the highest and best use of the part taken may be so related to the entire property that the value of the part taken for its highest and best use is dependent upon the value of the entire tract. Such relation or dependence may present an issue of fact and each party is entitled to

present his theory of independent or dependent valuation. Where the value of the part taken is dependent upon or related to the value of the entire tract, the fair cash market value thereof is the portion of the value of the entire tract which our hypothetical willing buyer and seller would deem applicable to the part taken. Implicit in such apportionment are two variables. The first is the value of the entire tract and the second is the basis for determining the relation of the part to the whole. It is the nature of the relationship of the part to the whole which determines the value of the part since all parts are not necessarily equally related. Department of Public Works and Buildings v. Foreman State Trust & Savings Bank, 363 Ill 13, 1 NE2d 75. The valuation of a part of a tract, considered as a part of the entire tract, assumes that the opinion is based on knowledge of the value of the entire tract and in our opinion such knowledge is required. Although there do not appear to be any Illinois cases dealing directly with this issue we believe that the basic principle is recognized in Forest Preserve Dist. of Cook County v. Draper, 387 Ill 149, 56 NE2d 410. In the Draper case the court held it was error to exclude cross-examination concerning the value of the entire tract where the valuation witness had expressed his opinion of value of the part taken considered as a part of the entire tract. The court concluded that such cross-examination was proper to test the opinion of the witness, no question being raised concerning the competence of a witness not having such knowledge. From the principle underlying such theory of valuation we believe that not only is cross-examination relative to the value of the entire tract proper but also that knowledge of such value is an essential requirement. Moreover it should be observed that absent evidence of the value of the entire tract, no opportunity is afforded the jury or the reviewing court to consider whether the valuation of the part taken does not in effect represent dam-

age to property not taken, even though, as in the instant case, no claim was made therefor.

■ ■ The State next argues the valuation opinions of respondent's witnesses took into account improper elements of value and hence such opinions are incompetent. There is no disagreement with the basic principle of valuation, namely that the fair cash market value of the property is its value for its highest and best use and that such use includes not only its actual use but also those uses for which the property is available or reasonably adaptable. Illinois Power & Light Co. v. Parks, 322 Ill 313, 153 NE 483. Those uses either actual or potential which reasonably affect the value of the property are appropriately considered. Where there are mineral deposits in the land, such as sand, the existence of such minerals is appropriately considered insofar as the value of the land is influenced thereby. 27 Am Jur2d, Eminent Domain, § 290. However it is not the value of the minerals which is the measure of compensation but rather the value of the land influenced by the existence of such mineral deposits. It is the future or potential exploitation of the mineral deposits which affects the value of the land since our hypothetical buyer and seller are not buying or selling specific or estimated quantities of a mineral. The present use and characteristics of the land are indeed strong factors in determining future prospects. Accordingly the quality and quantity of the sand, the actual use of the sand and the degree of such use, the ease or difficulty of extraction, transportation, and market potential all relate to the present potential for future exploitation of the sand deposits. Royalty payments which might be reasonably expected when considered with other factors affecting future exploitation are related to present value. The future exploitation of the sand as affecting present market value cannot be ascertained merely by multiplying quantities by some unit of price since the degree of exploitation depends on

186

many other variables. The capitalization of such future expectations is ordinarily the basis upon which such future expectations affect the present value of the property.

The objections of the State to the testimony of respondent's witnesses are based on their contention that such witnesses valued deposits of sand as a part of a business. In addition such witnesses relied on actual uses subsequent to the date of the filing of the petition and hence their opinions do not represent the value on the date of the petition.

Donald Oberlaender, Respondent, testified concerning his total production of sand for the five years preceding January 3, 1964. His production in 1959 was 34,333 tons, 1960, 36,708 tons, 1961, 29,327 tons, 1962, 23,982 tons and 1963, 27,054 tons. Such production amounts included sand for all uses, foundry sand, bituminous sand and fill sand and without specification included sand from the tract taken, the part not taken, and another small pit owned by respondent located three or four miles away. Respondent, over objection of the State, also testified concerning his total production of sand for the years 1964, 1965 and the first 4½ months of 1966. Such production was not in terms of specific tonnage but in percentage increases of production both with respect to total production and sales to particular customers. Respondent testified to increases in production of 12 to 28 percent, depending upon the periods compared, after January 3, 1964. Several of respondent's customers testified concerning the uses and quality of the sand which they purchased, the price paid for the sand and the amounts purchased both prior and subsequent to January 3, 1964.

Both parties agree the value of the property is to be determined as of January 3, 1964. Actual or specific occurrences, changes or conditions taking place or existing after the valuation date whether tending to indicate an increase or decrease in the value of the prop-

erty could not have either been known or considered by our hypothetical willing seller or buyer on the valuation date and therefore such subsequent considerations are not properly considered in determining opinions of value. In our opinion neither increases nor decreases in the production of sand subsequent to January 3, 1964, are proper elements of valuation for two reasons. First, as indicated before, such actual production could not have been within the contemplation of the parties valuing the property on the date of the petition and second, such production being from property not taken, it is no more relevant than would be the production of sand from any other pit supplying the Rock Island area. Accordingly we believe testimony of actual increases in production subsequent to January 3, 1964, whether offered by respondent's customers or relied upon by valuation witnesses was improper. Nor do we believe that the price paid by respondent's customers or received by respondent is a relevant consideration, such price involving as it does many factors such as the cost of extraction, drying, loading and transportation not related to the value of the land but rather related to the gross receipts or profits of the business. City of Chicago v. Central Nat. Bank in Chicago, 5 Ill2d 164, 125 NE2d 94.

Where, as in the instant case, compensation is to be determined with respect to a value of property as it existed some 2½ years ago we recognize the benefit of hindsight is not likely to be completely ignored by valuation witnesses. However the specific details affecting such hindsight can and should not be specifically considered.

 With respect to the State's contention that the valuation testimony of W. J. Reese should have been stricken by the trial court we believe that such contention is well founded. Not only did Reese base his opinion of

value on an actual increase in production of sand of 250 percent annually but it is difficult to conclude from a consideration of his entire testimony other than that he was valuing the sand as such and not the land as influenced by the existence of the sand. His testimony is somewhat contradictory, at one point in his cross-examination he indicated his opinion was based on the removal of all the sand at the time the petition was filed, at another point that the deposits of sand on the land taken would be exhausted in about twenty years, and at still another point that the diligence or lack thereof was related to the potential or prospective use of the sand.

The testimony of another valuation witness for respondent, William Chadwick, was also improper in many of the same respects. Not only does it appear from his cross-examination that he placed a dollar value on the reserves of sand to which he added the value of the land after the sand was removed, but he also characterized such sand as reserves ahead of the plant and in effect considered such reserves as a part of respondent's business.

We believe the same objections are applicable to the testimony of Fred Davis, a valuation witness for respondent. His opinion of value is based on the sale of a sand business and the sale of the sand by a good salesman.

The State next argues that the court erred in admitting as evidence, a motion picture film and certain photographs. One of the witnesses presented by respondent was the person in charge of the construction of the improvement on Interstate 80. The primary purpose for calling this witness was to identify a motion picture of about five minutes' duration which depicted activities on the scene during the process of construction. This motion picture was exhibited to the jury over the

189

objection of the State, which ruling is assigned as error. Motion pictures are considered admissible on the same basis as photographs, the principle question being one of relevancy. McGoorty v. Benhart, 305 Ill App 458, 27 NE2d 289, 18 ILP, Evidence, § 231. Since one of the issues was the nature, character and condition of the sand deposits we believe that such motion picture may have had some probative value on this issue. As testified to by the witness and as depicted in the motion picture, large quantities of sand were moved as a part of the construction project. The scenes depicted in the motion picture are the same as the jury would have seen had they viewed the premises at some earlier date or dates. Accordingly we believe the trial court committed no error in permitting the exhibition of the motion picture.

 Also assigned as error is the admission of photographs depicting respondent's loading and drying facilities located near a spur track some three or four blocks from respondent's property. We believe the trial court did not abuse its discretion in the admission of such photographs since the facilities depicted might be considered relevant in determining the highest use of the land taken and its present availability or capacity for such use. Department of Public Works and Buildings v. Chicago Title & Trust Co., 408 Ill 41, 95 NE2d 903.

 This brings us to the last question namely whether the judgment should be permitted to stand despite erroneous rulings of the trial court. In Forest Preserve Dist. of Cook County v. Draper, 387 Ill 149, 56 NE2d 410, the court stated, "The rule consistently applied in this State is that where the testimony as to values is in conflict, the jury has viewed the premises, and the verdict is within the range of the testimony, the award will not be disturbed on review unless there is

something in the record showing that the verdict was a clear and palpable mistake or the result of passion or prejudice, or that there was some erroneous ruling that might have misled the jury. (City of Mt. Olive v. Braje, 366 Ill 132; Dept. of Public Works and Buildings v. Foreman State Trust and Savings Bank, 363 Ill 13; Forest Preserve District v. Collins, 348 Ill 477; Forest Preserve District v. Dearlove, 337 Ill 555.) Another rule of equal importance is that in the trial of a condemnation of private property for public use, the court must give accurate rulings and correct instructions to the jury. (City of Chicago v. Lederer, 247 Ill 584.)" See also Waukegan Park Dist. v. First Nat. Bank, 22 Ill2d 238, 174 NE2d 824. We do not believe that cases such as Chicago Land Clearance Commission v. Darrow, 12 Ill2d 365, 146 NE2d 1, Department of Public Works and Buildings v. Bloomer, 28 Ill2d 267, 191 NE2d 245, or Trustees of Schools of Tp. No. 36 v. LaSalle Nat. Bank, 21 Ill2d 552, 173 NE2d 464, relied upon by respondent, support his contention that prejudicial error in the rulings of the trial court furnished no basis for the award of a new trial. Although the latter cases and their statement of the rule do not refer to prejudicial error, a review of such cases indicates that the court determined that no prejudicial error existed and the court was considering the application of the rule to the contention that the award was against the manifest weight of the evidence.

 Both the respondent and the State are entitled to have just compensation determined fairly. Where there are errors which may have materially affected or influenced the award it cannot be said that the award is fairly determined. While we are not prepared to say which, if any, of the errors standing alone would be sufficient to entitle the State to a new trial we believe that the cumulative effect of such errors requires a new trial.

191

For the foregoing reasons the judgment of the Circuit Court of Rock Island County is reversed and remanded with directions that the State of Illinois be granted a new trial.

Judgment reversed and remanded with directions.

ALLOY, P. J., concurs.

HOFFMAN, J., dissents without opinion.