STIRS, INC., Plaintiff-Appellant, *v.* THE CITY OF CHICAGO, Defendant-Appellee.

(No. 58394;

First District (3rd Division)—August 15, 1974.

*Rehearing denied December 5, 1974.*

Allan J. Blair and Joy Farnsworth, both of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Dennis James Stolfo, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiff, Stirs, Inc., brought suit in the chancery division of the Circuit Court against the City of Chicago for injuries caused by the demolition of a building owned by Stirs, located at 3625 South Rockwell Avenue, Chicago. The complaint contained two counts, the first sought removal of the City's lien as an illegal cloud on title, the second prayed for damages incurred as a result of the demolition. The chancellor found the demolition illegal, granted summary judgment and set aside the City's lien. The suit was then transferred to the law division for trial on the damages claimed in Count II. The plaintiff appeals from the law court's order assessing damages in the sum of $1 and from the denial of its petition for a new trial.

The sole issue on appeal is whether the court's award of only nominal damages for the loss in property value caused by the building's destruction and for legal fees expended by Stirs to remove the City's lien was reversible error.

The property was sold in March 1968 by the county collector for non-payment of the 1966 real estate taxes. Stirs acquired the certificate of purchase in December 1970 and was issued a tax deed by the Circuit

Court on February 9, 1971. The deed was recorded in the County Recorder's office on February 22. Less than a month before, January 26, 1971, the City had filed an action to demolish the building on the property. Lis Pendens notice of the suit was recorded on March 24th. Section 253a of the Revenue Act (Ill. Rev. Stat. 1969, ch. 120, par. 734a) provides that tax purchasers shall be made a party to any proceedings for demolition. Contrary to this requirement, Stirs was neither named a party nor notified of the City's suit. The demolition was completed in January 1972, and it was after this, according to the testimony at the trial of this cause, that Stirs learned there had been a demolition proceeding.

At the trial Stirs produced two witnesses, both real estate brokers. The first, Jocelyn Blair, was a member of the Chicago Real Estate Board, had been a broker for 10 years, and in that time had processed approximately 200 purchases and sales. She testified that she was familiar with the property at 3625 South Rockwell and had personally inspected the premises, including the interior of the two-story, frame building. She also claimed knowledge of real estate values in the area around the site, based on long residency in the neighborhood and her awareness of prices recently paid by area buyers. It was her estimate that the destruction of the dwelling diminished the property's value by $7,500. The assistant corporation counsel attacked the competency of her testimony because she had not personally handled the sales for which she quoted prices, but his objection was overruled. He then brought out that she was the wife of Allan Blair, the attorney for the plaintiff.

Geraldine Hoffman had been a broker for 5 years, and was a member of the South Side Real Estate Board. She had participated in approximately 400 sales. She predicated her valuation on a personal inspection of the structure at 3625 South Rockwell in February 1971. She had found it to be in "poor" condition, but located in a neighborhood of well-kept homes, some of them new, and based on her "general knowledge" of real estate values in the City, she concurred with Jocelyn Blair that the destruction of the building had diminished the value of the property by $7,500.

Miss Hoffman identified herself as the secretary and vice-president of the plaintiff Stirs, and testified that a $2,000 legal fee had been paid to Allan Blair for his services in removing the City's demolition lien on the property. Upon cross-examination she also revealed that Blair was the treasurer of Stirs.

No estimates were offered by the City as to the property's worth, either with the building or without it. Allan Small, a code enforcement inspector for the City Department of Buildings, testified that he had seen the property over regular intervals from July of 1970 until the

time of demolition. He stated that during this period the building remained in the same condition, and that it was vacant and locked. He had not seen the interior of the building and had no knowledge of its condition. His work sheet, introduced into evidence, declared that in his opinion the building was ten per cent depreciated, although in his testimony he described it as hazardous and dilapidated.

Other witnesses presented by the City were residents of the area. They testified to the poor exterior appearance of the house, but none had seen its interior prior to demolition.

■■ Stirs produced uncontested evidence of the value of the property and of the substantial loss sustained as a result of the demolition. Since the court gave no reasons for fixing damages at $1.00, we must conclude that the court did not believe the plaintiff's witnesses and found that the City only committed a technical trespass. This implied finding, as any factual finding of a trial court, must be accorded the same weight as the verdict of a jury and will not be reversed unless it is against the manifest weight of the evidence. *Hill v. Meister* (1971), 133 Ill.App.2d 678, 273 N.E.2d 643.

■■ As a general rule, tort damages to real property are measured by the difference in market value before and after injury to the premises. (*Donk Bros. Coal & Coke Co. v. Novero* (1907), 135 Ill.App. 633.) The two witnesses who testified as to value agreed that the property's worth had been diminished by $7,500 because of the City's removal of the improvements. The witnesses were licensed real estate brokers and experienced appraisers. The City argues that both witnesses were incompetent to testify on the issue of damages because they did not provide a sufficient foundation for their estimate of the property's value, and that their testimony was biased because of their personal interest.

■■ The general rule is that a witness may express his opinion as to the market value of real estate where it appears his opinion is based on some competence not possessed by the general public. Ownership or purchase and sale of generally similar real estate in the area is considered a sufficient foundation for an expression of opinion as to value. (*Department of Public Works & Buildings v. Oberlaender* (1968), 92 Ill.App.2d 174, 235 N.E.2d 3, *aff'd*, 42 Ill.2d 410, 247 N.E.2d 423.) But these are not the exclusive criteria for establishing the peculiar competency of a witness. The opinion of a professional appraiser is competent when based on a personal inspection of the premises and knowledge of the general value of real estate in the area. (*Department of Public Works & Buildings v. Oberlaender, supra.*) Mrs. Blair, who had been used by the City itself as an appraiser, was qualified in both respects. Miss Hoffman, on the other hand, never stated that she was personally

familiar with real property values in the area of the property, although she did claim familiarity with market values elsewhere in the City. However, the City did not object to her testimony, and objections to the admissibility of evidence or to the competency of witnesses cannot be made for the first time in a court of review. (*Dailey v. Meredith* (1965), 56 Ill.App.2d 230, 205 N.E.2d 640.) In any event, a trial court has broad discretion in determining if a witness has been qualified as an expert. *Taylor v. Carborundum Co.* (1969), 107 Ill.App.2d 12, 246 N.E. 2d 898; *Landfield Finance Co. v. Feinerman* (1972), 3 Ill.App.3d 487, 279 N.E.2d 30.

The City's cases concerning the competence of expert testimony are not in point. Two of them were affirmances of trial court exclusions of valuation opinions which incorporated economic elements considered incompetent to show market value, *i.e.*, the amount of business done on commercial premises (*City of Chicago v. Central National Bank* (1955), 5 Ill.2d 164, 125 N.E.2d 94), and decreased rental value where general market value of the premises would be increased in an alternative use. (*McCoy v. Union Elevated Railroad Co.* (1916), 271 Ill. 490, 111 N.E. 517.) *City of Elmhurst v. Rohmeyer* (1921), 297 Ill. 430, 130 N.E. 761, concerned testimony beyond the scope of the witnesses' knowledge. The court held that, in a jury trial, appraisals by Chicago real estate agents of the effect of a subdivision on the value of Elmhurst property were prejudicial because they were based solely on second-hand information supplied to them by Elmhurst realtors.

■■ The City's remaining justification for total disbelief of the witnesses, advanced only against Miss Hoffman, is that as secretary-vice-president of the plaintiff any estimate offered by her would have no probative value. Personal interest or bias, while it affects the weight and credibility of testimony (*People v. Rainford* (1965), 58 Ill.App.2d 312, 208 N.E.2d 314), is not pertinent to the question of competence. Expert opinions must be measured by the reasons given for the conclusions reached and the factual details marshalled in support of them. (*St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill.App.3d 165, 298 N.E.2d 289.) Mrs. Blair and Miss Hoffman admitted that the frame dwelling was in a poor, neglected condition, but they said it was still basically sound. Nothing in the testimony of the neighbors rebutted that assertion and the testimony of the City inspector, Small, tended if anything to corroborate it. Small stated that he found the building vacant, hazardous and dilapidated, but also secure—in fact he could not enter to inspect the interior. Pictures taken by him and admitted into evidence do not show a dilapidated structure. He was not familiar with property values in the area and did not offer an estimate

as to the building's worth, however his official inspection report, also admitted into evidence, stated that the building was only 10 per cent depreciated. While not fixing any value, that figure was corroborative evidence, from the City's own authority, that the structure possessed substantial value.

■■■■ Stirs claims that it was entitled to recover the fee it purportedly paid Attorney Blair to remove the cloud on its title created by the City's demolition lien. The general Illinois rule is that a successful litigant may not recover for the ordinary expenses and burdens of litigation unless provided by statute. (*Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E. 2d 41; *House of Vision, Inc. v. Hiyane* (1969), 42 Ill.2d 45, 245 N.E.2d 468.) There are few exceptions to this rule. One exception is in actions for malicious prosecution. If a plaintiff, in consequence of the wrongful conduct of the defendant, has incurred attorney fees and expenses in defending the suit, the amount so incurred is compensable. (*Krug v. Ward* (1875), 77 Ill. 603; *Farris v. Messimore* (1920), 219 Ill.App. 582.) This exception has been extended to include attorney's fees incurred to correct the adverse effect of a slander of title. (*Home Investments Fund v. Robertson* (1973), 10 Ill.App.3d 840, 295 N.E.2d 85.) Stirs has contended for the first time on appeal that Count II of its complaint included an action for slander of title, and that since no evidence was adduced by the City contradicting the evidence that the legal fee for removal of the City's lien was $2,000, it was error to deny that amount as damages.

■■■■ Under the progressive Civil Practice Act of Illinois, the label which is attached to a complaint is not really important as long as the complaint itself states a valid cause of action. (*Dross v. Farrell-Birmingham Co.* (1964), 51 Ill.App.2d 192, 200 N.E.2d 912; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill.App.2d 456, 181 N.E.2d 601.) However, a party cannot have relief under proof, without appropriate allegations of fact. The complaint in this case did not specifically set forth any of the factual allegations and circumstances which make up the elements of an action for slander of title. (For these, see *Home Investments Fund v. Robertson, supra*.) The only hint of an action aimed at any kind of intentional tort resides in the use in Count II of the conclusory phrase, "a deliberate and negligent tort." The two words, however, absent further factual elaboration, are merely redundant, and provide inadequate notice of a slander action. Apart from any question of mere labels, the complaint failed to allege the facts necessary for a recovery; in particular there is no mention of malice, which is the gist of any action for slander or libel. *Judge v. Rockford Memorial Hospital* (1958), 17 Ill.App.2d 365, 150 N.E.2d 202.

Stirs nevertheless asks this court to rule that despite its deficient

pleadings, it proved an unrebutted case of slander of title. In doing so, it relies on *Robertson* for the proposition that the malice element may be implied. In *Robertson*, it was said that malice is shown where the plaintiff proves the falsity of the recorded item, the defendant offers no evidence to show privilege, and the plaintiff incurs special damage. Even if we were to accept that definition and assume its appropriateness, it only emphasizes the importance of properly raising the issue in the first instance, so that a defendant may muster proof in rebuttal and on the affirmative defense of privilege.

■■ The pleadings did not allege the elements of a slander of title, nor were they labeled such. Even if by scrutinizing the proofs we concluded that a prima facie case was made out by the plaintiff, the defendant has not contributed to the formation of the issue by itself introducing evidence on the new matter, and so has not waived its right to object to the assertion of the theory. (*Hedrich v. Village of Niles* (1969), 112 Ill.App.2d 68, 250 N.E.2d 791.) And its objection is well taken. To have evidence without pleading an issue is just as fatal as pleading an issue and not supporting it with evidence; both are essential and each must conform to the other. *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill.App.2d 105, 185 N.E.2d 97.

■■ Since this action was neither brought nor litigated as one alleging slander of title, the plaintiff's legal fees expended in the removal of the City's lien were properly excluded as an item of damage. However, the implied finding of the court that the defendant committed no more than a technical trespass, causing no substantial decrease in the market value of the property, was manifestly contrary to the evidence provided by the plaintiff's witnesses, whose testimony the judge considered competent, and by the chief defense witness.

The judgment is reversed and the cause is remanded for retrial on the issue of damage to the plaintiff's real property caused by the City's demolition of the improvements on the premises.

Reversed and remanded.

McNAMARA, P. J., and McGLOON, J., concur.

### SUPPLEMENTAL OPINON ON DENIAL
### OF PETITION FOR REHEARING

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The City of Chicago has petitioned for a rehearing. It contends that in weighing the evidence we failed to consider certain facts adduced at the trial. Specifically, it is claimed that Stirs, who took title on February 9,

1971, knew or should have known of the City's demolition suit because the action was recorded in the tract book of the Chicago Title and Trust Company on January 26, and because a published notice of the suit appeared in the Chicago Daily Law Bulletin on February 10. The City argues that the building's demolition was thus an avoidable consequence of its failure to serve Stirs in the action (as it was required to do by statute), and therefore Stirs' loss was more the result of its own negligence than the City's.

No mention of these facts was made in the City's brief, which was addressed only to the issues discussed in the court's opinion. And the City's theory of avoidable consequences was neither advanced in the brief nor articulated before the trial court. The central issue on appeal was whether the trial court's finding was supported by the evidence; in such circumstances, of course, an appellate court may search the record to affirm the judgment. But we do not think it appropriate to do so at this late date. Before the probative value of the professed evidence could be properly weighed, it would be necessary to analyze unbriefed questions of law, such as: Is publication in the Law Bulletin sufficient notice to a party who is entited to personal service, when no showing has been made of diligent search? Is a party in the position of Stirs obliged to take notice of a filing in an unofficial record such as the Title and Trust Company's tract book?

■■ Moreover, the doctrine of collateral estoppel forecloses the City from relying on the purported facts. This action was initially brought in the Chancery Division of the Circuit Court where an order, entered on August 10, 1972, removed the City's demolition lien and found that the plaintiff's building had been wrongfully demolished. In the order the court found "in favor of the plaintiff with respect to all allegations of Count I of the complaint herein." Included among those allegations were the following:

> "[P]laintiff was neither named as a defendant in said action nor in any other way made a party or notified of said action.
> Plaintiff had no notice of and was unaware of the aforementioned demolition action until after the property was wrongfully demolished * * *."

The City made no attempt to appeal the chancellor's order.

The requested rehearing is denied.

Denied.

McNAMARA, P. J., and McGLOON, J., concur.