2 Ill. App.3d 797 (1972)
277 N.E.2d 754
NORTH SHORE SANITARY DISTRICT, Petitioner,
v.
POLLUTION CONTROL BOARD et al.
No. 71-157.
Illinois Appellate Court  Second District.
January 3, 1972.
Modified on denial of rehearing February 10, 1972.
*798 Murray R. Conzelman, of Waukegan, for appellant.
Wm. J. Scott, Attorney General, of Chicago, (Morton Friedman, Assistant Attorney General, of counsel,) for appellee.
Order reversed.
Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:
The petitioner, North Shore Sanitary District (hereinafter referred to as the District), seeks review of a decision rendered by the Pollution Control Board (hereinafter referred to as the Board).
While this review was pending, the Environmental Protection Agency (hereinafter referred to as Agency) moved this Court to dismiss the appeal as being moot. The motion and answer thereto were taken with the case. The motion is here denied.
The District is a municipal corporation which provides sewerage treatment to a portion of Lake County. It is bounded by Wisconsin on the north, the Cook County line on the south, Lake Michigan on the east, and, on the west, by the watershed divide between the Des Plaines River and Lake Michigan. The District has a plant located in each of the municipalities of Waukegan, North Chicago, Lake Bluff and Lake Forest, and three in Highland Park. All of these plants discharge their effluent, after chlorination, into Lake Michigan through extended out-falls.
In 1968, the federal government held a four state conference for the states of Wisconsin, Illinois, Indiana and Michigan, at which it was decided that, by the end of 1972, eighty percent of all phosphate should be removed from raw sewerage being discharged into Lake Michigan. The District intended to comply with this requirement.
On July 1, 1970, the Environmental Protection Act (hereinafter referred to as the Act) became effective in the State of Illinois. (S.H.A., Ch. 111 1/2, Sec. 1001 et seq.) This Act provides for the creation of the Pollution Control Board whose function, in part, is to adopt rules and regulations to accomplish the purposes of the Act. Ch. 111 1/2, Secs. 1005, 1010, 1013, 1017, 1022, 1025, 1026, 1027 and 1028. Pursuant to the authority granted by the Act, the Board, on January 6, 1971, adopted a phosphate regulation, R70-6, which amended the standard previously *799 established by the Illinois Sanitary Water Board. R70-6 provides that by the end of 1971, a percentage of phosphate shall be removed from water and effluent discharged into Lake Michigan. This regulation, in effect, advances the date of phosphate removal from the end of 1972 to the end of 1971.
On March 4, 1971, the District, pursuant to Title IX of the Act, filed a petition with the Board requesting a variance from R70-6 for all of its plants except the one located in Waukegan. The District requested that the phosphate removal regulation not be applied to the six plants until the end of 1972 due to unreasonable hardship. The District requested a variance from only that part of the regulation applicable to effluent, and did not request a variation from the water standards portion of the regulation.
The Board held a hearing on the petition in which the District called three witnesses on its behalf. Raymond E. Anderson, Secretary and General Manager of the District, testified that the District was notified in 1963 that its plants were overloaded and should be expanded; that in 1967, after delay not caused by the District, the District proceeded with its expansion program; that upon completion of the expansion program, effluent will no longer be discharged into Lake Michigan; that in order to raise money for the expansion program a thirty-five million dollar bond issue was presented to the voters of the District in a referendum; that the referendum passed; that the District may be able to obtain sixteen million dollars from the federal government toward its program; that construction costs for the program are currently estimated at eighty-six million dollars; that, consequently, the District is in dire need of funds in order to undertake the program; and that, in his opinion, if the District did not remove phosphate from its effluent until the end of 1972, there would be very little damage to the Lake because of the proportionately small amount of flow emanating from the District.
Herbert W. Byers testified that he is Chief Engineer of the District; that in order to comply with R-70-6, the District would have to construct temporary facilities at all of its plants; that the cost of the facilities would be $654,000 the first year, and $292,000 for each year thereafter; that the District does not have the funds necessary for these facilities; that once the expansion program is completed and no raw sewerage is discharged into the Lake, the temporary facilities would not be needed; that the facilities would then, in all probability, be useless, and the District would not recoup its original expenditure; and that, in his opinion, if the District does not remove phosphate until the end of 1972, there would be no adverse effect upon the Lake.
Matt Stahl testified that he is a sanitary engineer with the U.S. Navy, *800 stationed at Great Lakes, Illinois; that presently the Navy operates its own sewerage disposal plant; that the Navy has entered into negotiations with the District in order to have the District treat and dispose of the Navy's sewerage; and that any connection to the District's facilities would not occur until 1972.
The Agency produced no witnesses on its behalf.
On June 1, 1971, the Board rendered a final administrative decision consisting of an opinion and order in which the variance requested was denied. The Board based its decision on the grounds that, first, the one year delay in compliance would result in a harmful effect upon the Lake, and second, the cost of erecting temporary facilities and removing phosphate would be substantially less than indicated by the District's testimony. The Board reached these two conclusions after considering data, opinions, and testimony adduced at former hearings, none of which appear in the record before us.
The Act, Sec. 1041, provides that review of a Board decision may be obtained pursuant to the Administrative Review Act, Ill. Rev. Stat. 1969, Ch. 110, Sec. 264 et seq. However, instead of seeking review in the Circuit Court, the petitioner is afforded review directly in the Appellate Court. Therefore, the District seeks direct review in this Court contending that the Board's decision is against the manifest weight of the evidence in that all the evidence appearing in the record is favorable to the position of the District.
This case is the first one arising under the Act wherein a decision of the Board will be reviewed. Consequently, the District has requested us to set forth procedural guidelines which will control all future hearings, whereas the Agency requests us to establish a rule that will grant almost total deference to the expertise of the Board.
 1 The Agency first contends that we do not have jurisdiction to review the Board's decision in that the District is challenging the validity of R70-6, and that it is barred from doing so because it did not appeal the enactment of the regulation. However, the District does not now challenge the validity of the regulation; rather, it seeks relief from the strict application of the rule due to unreasonable hardship. The Agency counters that the petition, in effect, challenges the validity of R70-6 because only the District is affected since it alone discharges waste into Lake Michigan. This fact, however, does not appear in the record; to the contrary, the record indicates that the U.S. Navy at Great Lakes discharges into the Lake.
We come then to the central issue in the case. The Agency admits that the Board based its decision upon matters which are not within the record. Therefore, we must decide whether, according to Illinois law, *801 an administrative agency can base its decision upon facts, data and testimony which do not appear in the record.
 2-5 The Illinois cases have held that the reviewing court will search only the record in order to ascertain if the administrative findings are supported by the evidence.
"* * * the courts are not authorized to reweigh the evidence or to make an independent determination of the facts. The reviewing court is limited to a consideration of the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence * * *" [emphasis added]. Parker v. Dept. of Registration (1955), 5 Ill.2d 288, 294.
(See also: Harrison v. Civil Service Com. (1953), 1 Ill.2d 137, 145; Strohl v. Macon Co. Zoning Board (1952), 411 Ill. 559, 563; Secaur v. Civil Service Com. (1951), 408 Ill. 197, 202-203; Drezner v. Civil Service Com. (1947), 398 Ill. 219, 227-228.)
The courts have gone even further, and have explicitly held that:
"It is fundamental that a decision pursuant to an administrative hearing must be based upon testimony and other evidence received at the hearing and that a conclusion influenced by extraneous considerations must be set aside * * *" Des Plaines Cur. Exch., Inc. v. Knight (1963), 29 Ill.2d 244, 247.
(See also: Smith v. Dept. of Reg. & Education (1952), 412 Ill. 332, 345-349, and cases cited therein; Garces v. Department of Reg. & Education (1969), 118 Ill. App.2d 206, 224; Grab It Here Liquor Store v. I.L.C. Comm. (1964), 53 Ill. App.2d 31, 34; Fantozzi v. Board of Fire & Police Com'rs. (1962), 35 Ill. App.2d 248, 256-257, aff'd. 27 Ill.2d 357 (1963).) The rationale for restricting findings to evidence in the record is that due process of law requires that all parties have an opportunity to cross-examine witnesses and to offer evidence in rebuttal. (Garces v. Department of Reg. & Education, supra.) Consequently, according to Illinois law, the Board cannot properly base its findings upon information not found in the record.
The Agency agrees that the foregoing is a correct characterization of Illinois administrative law, but argues 1) that the Board should be treated differently than other administrative agencies by granting total deference to its expertise as, it is alleged, is the case with federal agencies, and 2) that a stipulation by the District placed all of the Board's files, records and orders, upon which is based its decision, into the record.
 6 We have read the cases cited by the Agency and have researched other federal decisions, but we do not find support for the proposition that federal law allows administrative agencies to base their decisions *802 on factors without the record. Rather, the rule established by the United States Supreme Court has always been that administrative decisions must be supported by substantial evidence contained in the record. (Int. Com. Commn. v. Louis. & Nash. R.R. (1913), 227 U.S. 88, 93-94; U.S. v. Abilene & So. Ry. Co. (1923), 265 U.S. 274, 288-289; Ohio Bell Tel. Co. v. Comm'n. (1936), 301 U.S. 292, 300-305; Goldberg v. Kelly (1970), 397 U.S. 254, 271.) We cannot, therefore, by federal example, allow the Board to exercise unrestricted discretion, nor can we find any compelling reason to treat it differently than other Illinois administrative tribunals.
 7 At the end of the hearing the District stipulated, "that the Board may take judicial notice of its own files and records, and its own orders." Although this stipulation presented the Board with the authority to consider its files and records in making its determination, it was not an agreement that the Board could base its decision upon information not placed within the record. In light of the broad stipulation, the Agency could have included portions of its files and records but did not do so. Failure to do so preempted this Court from reviewing evidence that may have been considered by the Board in reaching its decision. Consequently, we have no alternative but to reverse the order of the Board.
Order reversed.
ABRAHAMSON and GUILD, JJ., concur.

MODIFICATION ON DENIAL OF REHEARING
It is further ordered that the variance requested by the petitioner as set forth in the opinion herein be allowed.