FLEISCHMANN MALTING COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 60222;

First District (3rd Division)—May 1, 1975.

Thomas J. Regan and Richard A. Zachar, of Pope, Ballard, Shepard & Fowle, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Russell R. Eggert, Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The Illinois Environmental Protection Agency filed a complaint with the Illinois Pollution Control Board which charged that the Fleischmann Malting Company violated the State Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) by discharging "gaseous organic emissions" into the atmosphere. After a public hearing, the board, with one member dissenting, sustained the charge and ordered the company to pay a fine of $1,000 and to cease its violation of the Act. Fleischmann has petitioned for review as provided for in section 41 of the Act. Ill. Rev. Stat., 1971, ch. 111½, par. 1041.

Fleischmann operates a grain-storage and processing facility at 2143 West 51st Place, Chicago. Malt is produced by first fermenting barley grain and then drying it in large kilns. In the drying process warm air is drawn through the malt and expelled through rooftop apertures. When the facility is in full operation, approximately 480,000 cubic feet per minute of warm, moist air is exhausted through these vents.

The agency's complaint, filed on May 4, 1973, was directed at the company's drying operation and alleged:

"5. That in the operation of said facility the Respondent has caused or allowed the discharge of gaseous organic emissions into the ambient atmosphere of the State of Illinois.

6. That such gaseous organic emissions are contaminants.

7. That the above described contaminants have such characteristics and are of such duration, that they constitute air pollution as that term is defined in section 3(b) of the Act, in that they cause

injury to the health of persons living in the vicinity of emissions from said processing facility or unreasonably interfere with the enjoyment of life or property of such persons.

8. That, therefore, beginning on or about July 1, 1970, and continuing every day of operation of the facility to the filing of this complaint, Respondent has violated section 9(a) of the Act. * * *"

Fleischmann asserts that the agency failed to prove these charges and asks that the order of the board be vacated. Specifically, it contends that the only evidence adduced by the agency at the hearing was air pollution by odor—that it presented no proof of gaseous organic emission, the contaminant alleged in the complaint.

In order to sustain its charge, the agency was obliged to establish, first, that a gaseous organic contaminant was present in the effluent discharged by the company; second, that this contaminant caused such harm that it should be deemed air pollution under the definition of the Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).) "Organic material," according to the regulations of the Pollution Control Board, denotes any chemical compound of carbon, with certain exceptions not relevant to this discussion. P.C.B. Regs., ch. 2, R. 201.

At the hearing the agency produced four witnesses: Howard Chinn, chief engineer for the Environmental Control Division of the Attorney General's Office, and three citizens who lived within a block of the Fleischmann plant. Chinn inspected the plant in July 1973. While there he went onto the malt-house roof, where he detected a malodorous gas arising from the kiln vents. He described the gas by its smell, stating, "It is a musty odor. It was damp. You could see the dampness to it." Beyond that he identified no properties of the emission. He admitted his ignorance as to its makeup and acknowledged that no stack tests had been conducted to analyze the discharge. His sole reference to the presence of organic matter in the emissions occurred during recross examination. After describing a filtration system employed by a manufacturer of iron castings to control "particulate matters laden with odorous substances," he was asked how such an emission compared to the gas given off by Fleischmann's facility, and answered, "[B]oth are organic emissions, or are of organic nature." This remark was neither explained nor amplified.

The three citizens testified that the facility produced obnoxious, harmful odors. One said that a sour, "really bad malt smell" issued from the plant nearly every day, even in the summer when, according to Fleischmann's testimony, the plant was closed for cleaning operations. At times the odor became so unpleasant that she was forced to remain indoors.

The second said that the smells emanating from Fleischmann nauseated her. To obtain relief she had installed an air conditioner in her home. The third, who lived closest to the facility, complained that at various intervals a sulfur cloud was discharged from the plant, driving him indoors and coating neighborhood automobiles with a film of white dust. It was stipulated that five additional lay witnesses were prepared to appear and would give testimony substantially similar to that provided by those who did testify.

■■ Pleading a material issue without supporting it by proof is fatal to a complaint. Pleadings and proof must conform to one another. (*Consoer, Townsend & Associates v. Addis* (1962), 37 Ill.App.2d 105, 185 N.E.2d 97.) The testimony of the lay witnesses pertained to matters beyond the scope of the charge in this proceeding. The only emissions which they can be said to have identified were odors and sulfuric particulates. Nor did Chinn, the expert witness, establish more than that the facility exuded a damp, musty gas. His unexplained remark that the emissions were organic was offered without foundation. He had already admitted that he could recall no previous personal experience with this sort of operation and that no tests had been conducted to analyze the contents of the discharge. He demonstrated no special knowledge to justify acceptance of his chemical characterization. As we recently said in a different context, the opinions of expert witnesses must be measured by the reasons given for the conclusions reached and the factual details marshalled in support of them. (*Stirs, Inc., v. City of Chicago* (1974), 24 Ill.App.3d 118, 320 N.E.2d 216.) Additionally, Chinn's abbreviated reference to the "organic nature" of the effluent in no way tied its organic quality (*i.e.*, the presence of carbon compounds, if any) to the odors of which he and the other witnesses testified.

The brief for the agency acknowledges the difference between the charge and the proof. It argues, however, that charges in an administrative proceeding need not be formulated with the precision required in a court, and cites *Joyce v. City of Chicago* (1905), 216 Ill. 466, 75 N.E. 184, and *Schyman v. Department of Registration and Education* (1956), 9 Ill.App.2d 504, 133 N.E.2d 551. In both cases the complaints were attacked for indefiniteness. They are not pertinent to the issue here presented, which is whether a definite charge has been proved.

■ It is also argued that reasonable inferences from the evidence sustain the order of the board, since the odors "could hardly have been anything other than gaseous organic compounds." The argument is supported with this reasoning: it is scientifically known fact that the malting of barley yields organic compounds, such facts are subject to judicial notice in the circuit court, therefore the board could properly have taken

notice of this fact. First, it is questionable whether the yielding of organic compounds by the malting of barley is so commonly known that a court could properly take judicial notice of it; second, the record reveals that the board took no such notice; third, an administrative tribunal cannot rely upon its own information for support of its findings (*Smith v. Department of Registration and Education* (1952), 412 Ill. 332, 106 N.E.2d 722), and this prohibition applies to the Pollution Control Board (*North Shore Sanitary District v. Pollution Control Board* (1972), 2 Ill.App.3d 797, 277 N.E.2d 754).

Under the definitions of the Environmental Protection Act, a "contaminant" is "any solid, liquid, or gaseous matter, any odor, or any form of energy, from whatever source." (Ill. Rev. Stat. 1971, ch. 111½, par. 1003(d).) If the Environmental Protection Agency had charged that the Fleischmann Malting Company emitted noxious odors, the complaint would have been sufficient and the complaint and the proof would have conformed to each other. (*City of Monmouth v. Pollution Control Board* (1974), 57 Ill.2d 482, 313 N.E.2d 161.) Indeed, it would appear that the evidence made out a case of air pollution by odor. But the complaint named gaseous organic emissions, not odor, as the offending contaminant, and no attempt was made to amend the complaint to conform to the proof.

■■■ Decisions of our supreme court have made manifest that neither charges nor findings of air pollution under section 9(a) of the Act are conditioned upon the adoption of regulations and standards by the board. Section 9(a), when read in conjunction with sections 3(b), 3(d) and 33(c), contains sufficient standards. (*City of Monmouth v. Pollution Control Board*; *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 328 N.E.2d 5.) To further expand this already liberalized standard of pleading, by eliminating the requirement that the agency specify the particular contaminant which is the source of the alleged harm, would strain the concept of due process through meaningful notice. That one contaminant should be alleged and another proved is a form of procedure even less acceptable.

Since the record contains no competent evidence that Fleischmann discharged gaseous organic matter, or evidence which equates such matter with the annoying odors which were discharged, the allegations of the complaint were not sustained and the board's order must be vacated.

Order vacated.

McGLOON, P. J., and McNAMARA, J., concur.