THE CITY OF PEKIN, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 76-93

Opinion filed April 6, 1977.

William F. Morris, of Pekin, for petitioner.

William J. Scott, Attorney General, of Springfield (John Van Vranken, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

The City of Pekin has filed this administrative review action for review of an order entered by the Illinois Pollution Control Board in an enforcement proceeding involving the Pekin landfill site. This proceeding originated with a complaint filed by the Environmental Protection Agency charging that the city operated a solid waste management site without a permit as required by section 21(e) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1021(e)) and by Rule 202(b)(1) of the Board's Solid Waste Rules and Regulations.

In its complaint the agency requested that the city be ordered to cease and desist the violations charged, that the city be ordered to discontinue refuse disposal activities at the site unless a permit is obtained, and that the city be assessed a penalty of $10,000 for past violations plus $1,000 per day for continuing violations.

In a stipulation of facts, the city admitted that it had been operating a 25-acre solid waste management site since 1965, that approximately eight acres were in use at the time the complaint was filed, and that two

applications for a permit had been denied prior to the hearing. It was also stipulated that the city had stopped dumping refuse at the site about 10 days before the hearing. The agency placed in evidence its request for an admission that the city had operated the site without a permit. The city did not answer the request, and under Rule 314(c) of the Board's Procedural Rules, the facts asserted in the request were admitted unless denied.

At the hearing, witnesses for the city testified that the only complaint that had ever been received relating to operation of the site concerned a one-time problem with windblown litter along the highway. The nearest water, other than surface water ponds at the site, was an intermittent stream one-quarter to one-third miles from the site that only flows during heavy rains. The site is located in a rural area, one-quarter to one-half mile from the nearest residence and occupies a deep gully that formerly was a gravel pit. The soil available at the site for use as cover is sandy loam.

Much of the testimony of the city's witnesses concerned the agency's cover requirements for a closed solid waste management site. The city engineer testified that 132,000 cubic yards of cover material would be required to bring the entire 25-acre site up to grade with a two-foot cover of impervious material, such as clay soil. This estimate was based on a field survey, and took into account the present topography of the site plus the need for natural drainage. This same witness estimated that the total cost of closure would be $792,000 (132,000 cubic yards at $3.90 per cubic yard for material and $2.10 per cubic yard for grading, leveling and seeding). On cross-examination, the witness admitted receiving another offer for cover material at $3 per cubic yard, and also stated that hopefully the entire 25 acres would not require final cover, but only the part last in use. However, he said that the part already covered was not in conformity with present regulations.

The mayor of the city testified that the financial impact of a $792,000 cost for closing would require a severe curtailment of municipal services or a tax increase of 50 cents per $100 valuation. The city's attorney testified about a meeting with agency representatives at which time he was informed that the entire 25 acres must be brought up to grade and then a final cover of two feet of impermeable clay must be applied.

In rebuttal, the regional supervisor of land pollution control for the agency, William C. Childs, testified that the agency requires six inches of daily cover. Any area that is not to be used within 60 days must then have an additional six inches of cover to provide intermediate cover of one foot. An additional one foot is required to have a final cover of two feet.

The agency witness also stated that no soil tests or tests of the water table have ever been made to determine what if anything is being polluted by the Pekin Landfill. Leachate (a highly polluted water) has

been observed on the site but none was ever observed leaving the site. He also said that the city was denied a permit because of the potential for pollution. He testified that neither the Act nor agency regulations require submission of a closure plan, but that it is agency policy to request a closure plan documented with evidence of subsoil conditions, current grade, soil classification of site, provisions for monitoring, a map showing present cover, and the proposed grade showing drainage patterns and leachate collection.

During closing arguments, the Assistant Attorney General representing the agency made an oral motion to amend the complaint to request that the city be ordered to submit a closure plan, citing Procedural Rule 328 which permits amendment of the pleadings to conform to the evidence. The city objected, and the hearing officer ruled that the motion to amend was not timely but that the board would decide whether an amendment to the complaint was necessary to permit a closure order at this time. Procedural Rule 308 provides, in part:

> "(f) The Hearing Officer shall rule upon all motions, except that he shall have no authority to dismiss or decide a proceeding on the merits, or for failure to state a claim, or for want of jurisdiction, or to strike any claim or defense for insufficiency or want of proof. The Hearing Officer shall refer any such motion to the Board * * *.
>
> * * *
>
> (h) Rulings of the Hearing Officer may be reviewed by the Board after conclusion of the hearing, but will be set aside only to avoid material prejudice to the rights of a litigant."

After the hearing, the transcript was sent to the board along with the hearing officer's statement that all witnesses appeared very credible and that credibility was not at issue.

The opinion and order of the board included findings that the city operated its solid waste management site without the required permit and that the city therefore committed the violations charged. The board stated that the prayer for relief in the complaint was amended and said:

> "In light of Pekin's cessation of operations on the site after the Complaint was filed, and testimony presented at hearing by Pekin, that amendment was proper under our Procedural Rules."

The board summarized the city's evidence as to the cost of final cover and concluded that the city's position was "without foundation." Cross-examination "showed that the City was unclear as to whether the entire site would need two feet of cover, or as to whether prior applications of daily or intermediate cover would apply as against the final cover requirements." The board also found that there is a real danger of leachate pollution from the site. The board decided that Pekin must

properly close and cover the site, and said, "We trust that in presenting a closing plan to the Agency, Pekin will minimize its own costs * * *." The board then ordered the city to cease all solid waste disposal activities on the site and to close the site pursuant to a closure plan prepared by the city and acceptable to the agency.

On review the city first contends that the board's finding that there is a danger of leachate pollution at the site was against the manifest weight of the evidence, particularly in the absence of some actual evidence of pollution or of soil conditions. Included in the record is a letter sent to the city by the agency denying its second application for an operating permit. That letter refers to a hydrologic evaluation by the Illinois Geological Survey in 1974 which found highly permeable gravel for a depth of 75 feet at the site, and concluded that "the leachate generated by wastes will migrate into the gravel aquifer and the proximate Illinois River."

■■ Since the letter was in evidence before the board, and since the city introduced no evidence to contradict the facts set out in the letter, we believe the finding that a danger of leachate pollution existed was supported by the record. See *Tri-County Landfill Co. v. Pollution Control Board* (2d Dist. 1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.

Next, the city assigns as error the finding that two feet of final cover may not be necessary over the entire 25-acre site. The testimony of Childs supported the finding. However, we do not believe that finding was relevant to this permit violation proceeding. Instead, it would seem that any dispute as to what will constitute satisfactory final cover is a matter to be resolved either in a variance proceeding or in a separate proceeding to enforce the board's closing regulations.

■■ The city also argues that the board failed to consider the economic reasonableness of its order to close the Pekin landfill. The city's argument presupposes that the cost of closing the site will be $792,000. However, until such time as a closure plan is prepared, the quantity and cost of required cover material is speculative. Board regulations do not permit a refuse disposal site to remain open and uncovered when not in use. If the closure plan ultimately agreed to requires only one foot of additional cover in most areas, the cost will be much less than the city's estimate. The order of the board which is before us does not set out specific closure requirements, and thus we cannot say that the direction to close the site is economically unreasonable.

■■ The most significant issue presented for review is whether the board could properly require the city to submit a closure plan when the complaint did not request such action. The board's opinion seems to assume that the hearing officer permitted an amendment to the complaint at the close of evidence and states that the amendment was proper. According to the record, the hearing officer refused to allow the

amendment but said that the board would decide whether a closure plan could be required under the complaint without amendment. Procedural Rule 308(h), set out above, permits the board to set aside rulings of the hearing officer but only to avoid material prejudice to the rights of a litigant. Here the denial of the amendment did not materially prejudice the rights of either the city or the agency. Consequently the board could not properly reverse the ruling of the hearing officer and permit the amendment if in fact that is what was intended by the order.

■■ Without the proposed amendment, the propriety of requiring the city to submit a closure plan becomes an issue. The agency has cited no statute, rules, or regulations which place the burden of preparing a closure plan with supporting maps and data on the landowner. Childs, the agency witness, testified that submission of a closure plan is agency "policy" but is not contained in any rule or regulation. In the absence of the board order, the city could place whatever final cover it deems sufficient on the site and then wait for the agency to initiate enforcement proceedings. The burden would then be on the agency to establish the inadequacy of the final cover. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031; *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 319 N.E.2d 794; *CPC International, Inc. v. Pollution Control Board* (3d Dist. 1974), 24 Ill. App. 3d 203, 321 N.E.2d 58.) As an alternative, the city could apply for a variance from the agency's final cover requirement.

■■ Of primary importance is the fact that the complaint did not charge the city with violating cover requirements for solid waste disposal sites or with failing to comply with closure regulations. In an enforcement proceeding, the respondent is entitled to notice of a specific violation charged against it and to notice of the specific conduct constituting the violation. (*Draper & Kramer, Inc. v. Pollution Control Board* (1st Dist. 1976), 40 Ill. App. 3d 918, 353 N.E.2d 106; *Citizens Utilities Co. v. Pollution Control Board* (2d Dist. 1972), 9 Ill. App. 3d 158, 289 N.E.2d 642.) The fact that the city introduced evidence regarding closure requirements did not cure the defect in this proceeding, and, as a reviewing court, we may consider only the evidence which was concerned with the violations charged in the complaint. (*Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1st Dist. 1974), 20 Ill. App. 3d 301, 314 N.E.2d 350.) The effect of the board's order is to place on the city the burden of establishing that its closure procedures comply with board regulations. However, the city is entitled to the benefit of a favorable burden of proof in enforcement proceedings (*Citizens Utilities Co. v. Pollution Control Board*), and the board cannot shift that burden by ordering the city to show compliance with regulatory provisions which are outside the scope of the complaint.

■■ A final issue is raised by the agency's motion to strike from the

record on appeal a letter from the agency to the city, dated six weeks after the hearing, which mentioned that two feet of cover was required over the entire 25 acres. The letter was filed by the city in connection with a motion to stay the board's order. This court has taken the motion with the case. Neither the board nor a reviewing court can base a decision on matters which are not received in evidence. (*North Shore Sanitary District v. Pollution Control Board* (2d Dist. 1972), 2 Ill. App. 3d 797, 277 N.E.2d 754.) We have not, therefore, considered the letter in reaching our decision, and obviously the board did not rely upon the letter either. However, we believe the motion to strike should be denied because the letter was properly filed with the board in the stay proceeding.

Accordingly, we affirm those parts of the order finding a permit violation, ordering the city to cease and desist disposal activities at the site, and ordering the city to close the site in conformity with the Board's Rules and Regulations. The remainder of the order requiring submission of a closure plan is reversed.

Affirmed in part; reversed in part.

STOUDER and BARRY, JJ., concur.