CATERPILLAR TRACTOR COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 76-114

Opinion filed May 19, 1977.

BARRY, J., specially concurring.

Jeffrey C. Fort and Richard J. Kissel, both of Martin, Craig, Chester & Sonnenschein, of Chicago, and Charles Gustafson, of Peoria, for petitioner.

Roy E. Hofer and Gary M. Ropski, both of Hume, Clement, Brinks, Willian, Olds & Cook, Ltd., of Chicago, for respondent Pollution Control Board.

John Palincsar, of Springfield, for respondent Environmental Protection Agency.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Caterpillar Tractor Company has petitioned this court for administrative review of an order of the Illinois Pollution Control Board denying a petition for variance from air pollution standards. The Environmental Protection Agency, which had recommended that the variance be granted, also argues for reversal of the Board's order but supports certain other rulings of the Board. The Board and the Agency have thus adopted conflicting positions in this case, and we earlier appointed special counsel for both the Agency and the Board in view of the Attorney General's conflict of interest.

Caterpillar operates a foundry employing 3,200 persons at Mapleton,

Illinois, near Peoria, where ferrous metals are processed, melted, and cast for eventual use at other Caterpillar plants in the manufacture of earthmoving and construction equipment and diesel engines. The Mapleton plant has twelve 25-ton capacity melt furnaces which discharge particulates into the air at the plant site via roof ventilators located 52 feet above the furnaces.

Since 1972 Caterpillar has filed four applications for operating permits with the Agency, all of which have been denied. In 1974, Caterpillar undertook a testing procedure that involved temporary hooding of ventilators to measure particulate emissions from three furnaces. The test results demonstrated that the emission level for the foundry exceeded the Board's particulate emission standards at the rate of 80 pounds of particulates per hour. On February 25, 1975, Caterpillar initiated this variance proceeding, proposing to install a hooding and duct system with cloth bag filters which will have a dust collection efficiency of 99%, thereby achieving full compliance with the Board's emission standards. The cost of the compliance program is $2,482,700.

In its petition Caterpillar requested a variance from the particulate emission standards of Board Rule 203[1] and also from the operating permit requirements of Rule 103[2] until July 1, 1977, when the compliance plan will be completed. The petition asserted that continued operations posed no threat of injury to the public and that immediate compliance would impose an arbitrary and unreasonable hardship on Caterpillar.

The Agency filed its recommendation that the variance from Rule 203 be granted but that a variance from the permit requirements of Rule 103 be denied. The Agency had interviewed eight persons residing near the foundry, seven of whom had no objection to the variance. The Agency stated that the emission control plan would achieve compliance and that the July 1, 1977, compliance date was reasonable. The recommendation also concluded that Caterpillar had shown good faith in dealing with the Agency.

At the hearing on the petition a stipulation of facts was presented to the Hearing Officer, which included a detailed explanation of the proposed compliance program and of the current level of particulate emissions based on Caterpillar's 1974 tests.

Caterpillar's plant engineer testified to Caterpillar's emission tests in 1972 and 1973 which had indicated no violation and also to the results of air quality monitoring by the Agency at six sites in the Peoria metropolitan area. In a report sent to Caterpillar by the Agency in April of 1975, the 1973 annual report and the 1974 preliminary report showed no violation of national ambient air quality standards at any of the six Peoria area

---

[1] Ill. P.C.B. Rules and Reg., ch. 2, Rule 203.

[2] Ill. P.C.B. Rules and Reg., ch. 2, Rule 103.

monitoring sites based on 24-hour particulate concentrations. The annual geometric mean of particulate concentration indicated that the national limitation of 75 micrograms per cubic meter was exceeded in 1973 at one site located 13 miles from the foundry, and in 1974, at one site located 11.5 miles from the foundry. At three sites the 1974 data on annual concentration were incomplete.

The plant engineer also testified that the only alternative to the proposed compliance plan would be to shut down the furnaces which would put the foundry's total operation "in jeopardy" and would "severely affect" Caterpillar's overall production. Another engineer described the hood and duct system he had invented to meet Caterpillar's requirements within the physical limitations of the existing foundry building, and he also explained why alternative systems were not feasible.

At the conclusion of the hearing, both Caterpillar and the Agency submitted briefs urging a grant of the variance from Rule 203. The Agency however advocated denial of the request for a variance from Rule 103. The Agency concluded that the ambient air quality data suggested nothing about the air quality close to the foundry or about Caterpillar's contribution to the particulate concentration at the monitoring sites ten or more miles distant from the plant, and that Caterpillar's evidence was not adequate to establish whether the foundry contributed to the air quality problem in the general area.

On February 19, 1976, the Board dismissed Caterpillar's petition for variance for failure to prove that its emissions do not contribute to a violation of the ambient air quality standards and for failure to show that compliance will impose an arbitrary and unreasonable hardship. The Board opinion stated that it took official notice of the Agency's final 1974 Annual Air Quality Report, published in September 1975, three months after the hearing. In the final 1974 report, the annual limitation was exceeded at two monitoring sites, one five miles and the other 11.5 miles from the foundry. The Board concluded that Caterpillar had the burden of proving that its particulate emissions do not cause or contribute to violations of the ambient air quality limitations in the Peoria area, and that it failed to sustain that burden. The Board also commented that, since denial of a variance is not a shutdown order, the denial need not result in cessation of production activities.

This administrative review action followed the Board's ruling. We believe the variance should have been granted.

■■ Under section 35 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1035), the Board is authorized to grant individual variances whenever "compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship." Section 37 of the Act places the burden of proof on the person

seeking a variance, and requires the Agency to investigate the petitions filed, to consider the views of persons who would be adversely affected by the grant of a variance, and to recommend a disposition of the petition.

The Board's Procedural Rule 401(c)[3] requires that a petition for variance contain the following:

> "The injury that the grant of the variance would impose on the public including the effect that continued discharge of contaminants will have upon the air, water or land."

This Rule was amplified in *King-Seeley Co. v. E.P.A.*, 16 PCB 505 (April 24, 1975), in which the Board, after considering the Supreme Court's decision in *Train v. Natural Resources Defense Council, Inc.* (1975), 421 U.S. 60, 43 L. Ed. 2d 731, 95 S. Ct. 1470, ruled that variances would no longer be granted where they would result in violations of the ambient air quality standards previously adopted. The Board specifically stated that a petition must show whether the air quality of the affected area meets those standards, and, if not, that the petitioner's emission source does not cause or contribute to the violation. In other words, any petitioner located in an area whose air quality readings exceed those standards will be denied a variance.

Although the Board, in its brief and argument before this court, has insisted that the *Train* decision was not a factor in its dismissal of this variance petition, we think the Board opinion is based quite clearly on Caterpillar's failure to meet the requirements announced in the *King-Seeley* decision.

Caterpillar has directed our attention to a recent decision in which the Board expressly overturned the policy announced in *King-Seeley*. In *International Harvester Co. v. E.P.A.* (No. PCB 75-271, Sept. 15, 1976), the Board found that Harvester's emissions from a coke oven installation do contribute to the violation of the national air quality standards in the Chicago area, but nevertheless granted the petition for additional compliance time after finding that Harvester had followed a program of compliance under previous variances in good faith. In its opinion the Board quoted the policy announced in *King-Seeley* and then stated:

> "This policy has been generally followed by the Board up to the present time. Upon reconsideration of the situation, however, the Board hereby overturns its previous policy and interpretation of the impact of the *Train* decision upon the Board's power to grant variances under the Act."

The Board then said that the variances have been a useful tool in the fight against pollution since they allow the Board to grant justified temporary exemptions from its Rules and Regulations.

---

[3] Ill. P.C.B. Rules and Reg., ch. 1, Rule 401(c).

■■ On the basis of the record on review, we fail to see any justification for refusing to grant a variance to Caterpillar under the principles applied by the Board in the *Harvester* decision. As in *Harvester*, Caterpillar's good faith is undisputed. Here there is no evidence that Caterpillar caused or contributed to the air quality violation at monitoring stations located five and ten or more miles distant from the foundry. There is evidence that persons living in the vicinity of the plant have suffered no injury from plant operation sufficient to outweigh the economic impact of a foundry shutdown. Furthermore, there is uncontradicted evidence that the only alternatives presently available to Caterpillar are to obtain a variance, to operate the furnaces without a permit in violation of law, or to shut down the furnaces. Contrary to the conclusion reached by the Board, we believe Caterpillar did establish that a denial would cause an arbitrary or unreasonable hardship. The arbitrariness of the hardship is particularly evident, when compared with the *Harvester* decision.

As was said in *Robert N. Nilles, Inc. v. Pollution Control Board* (2d Dist. 1974), 17 Ill. App. 3d 890, 894, 308 N.E.2d 640, 643:

> "Administrative and judicial proceedings are governed by the fundamental principles and requirement of due process of law. An administrative body, as well as a court, has broad discretionary powers, but this power must be exercised judiciously, not arbitrarily."

Caterpillar had the burden of establishing that the hardship resulting from a denial of the variance would outweigh the injury to the public from a grant of the petition. We believe this burden was met and that the decision of the Board was contrary to the manifest weight of the evidence.

The other alleged errors urged by Caterpillar need not be considered in view of our holding. However, in the exercise of our discretion, we believe one additional issue is particularly deserving of consideration. Caterpillar argues that it was error for the Board to base its findings on the Agency's final 1974 report of ambient air quality which was not in evidence, and a motion to expunge that report from the record on review has been filed in this court. The report was filed in this court at the same time the Board's brief was filed and was never a part of the record of the Board as certified by the clerk of the Board.

The Board contends that it may take "official notice" of the final 1974 report pursuant to its Procedural Rule 322, which states:

> "Official notice may be taken of all facts of which judicial notice may be taken and of other facts within the specialized knowledge and experience of the Board."

Both Caterpillar and the Agency argue that the Board could not consider the report because it was never made a part of the record as required by

*North Shore Sanitary District v. Pollution Control Board* (2d Dist. 1972), 2 Ill. App. 3d 797, 277 N.E.2d 754. Furthermore it is argued that this court is precluded from taking the report into consideration under section 11 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274), which provides in part:

> "The hearing and determination [on review] shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court."

Caterpillar also points out that this court can permit the record to be amended or completed (Ill. Rev. Stat. 1975, ch. 110, par. 275), but that no such action has been sought or taken here. Instead the Board has attempted to place the report before this court by filing it with the clerk of the appellate court and by including a copy of the pertinent pages of the report in the Board's brief.

■■ The law in Illinois is clear. As the supreme court stated in *Des Plaines Currency Exchange, Inc. v. Knight* (1963), 29 Ill. 2d 244, 247, 194 N.E.2d 89, 91: ·

> "It is fundamental that a decision pursuant to an administrative hearing must be based upon testimony and other evidence received at the hearing and that a conclusion influenced by extraneous considerations must be set aside. (*Morgan v. United States*, 298 U.S. 468, 80 L. Ed. 1288.)"

Also, *North Shore Sanitary District v. Pollution Control Board* (2d Dist. 1972), 2 Ill. App. 3d 797, 277 N.E.2d 754; *Monsanto Co. v. Pollution Control Board* (5th Dist. 1976), 39 Ill. App. 3d 333, 350 N.E.2d 289; *Fleischmann Malting Co. v. Pollution Control Board* (1st Dist. 1975), 28 Ill. App. 3d 659, 329 N.E.2d 282; *City of Pekin v. Environmental Protection Agency* (3d Dist. 1977), 47 Ill. App. 3d 187, 361 N.E.2d 889.

Therefore we cannot permit the Board to take official notice of scientific data and reports published after the hearing and relied upon to support its findings. Basic notions of fair play require that the parties have an opportunity to cross-examine, explain or refute facts which are the basis for an adjudication. (See McCormick on Evidence § 332 (2d ed. 1972)). For example, Rule 201(e) of the Federal Rules of Evidence provides:

> "(e) Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." See also Administrative Procedure Act, 5 U.S.C. § 556(e) (1970).

■■ In our view, an administrative agency may take official notice of facts known to it only when such facts are disclosed and put upon the

record so as to afford a party an opportunity to be heard. (See 2 Am. Jur. 2d *Administrative Law* § 236 (1962).) Accordingly, we grant the motion to expunge.

We note that the Board's opinion indicates that the preliminary report contained insufficient data and that the Board expressly relied upon the annual concentration figures contained in the final report to reach its conclusion that Caterpillar should be denied the requested variance. For this reason alone, the decision of the Board should be reversed.

■■ As we have indicated, on the basis of the record before us, Caterpillar is entitled to a variance from the emission limitations of Rule 203. Caterpillar has also requested a variance from Rule 103 by which the foundry could continue to operate without an operating permit. Under Rule 103, Caterpillar will be entitled to an operating permit if it receives a variance from Rule 203. In the absence of any evidence that an application for an operating permit would be an arbitrary or unreasonable hardship, we believe that Caterpillar has failed to establish its need for a variance from Rule 103.

In its recommendation for a grant of the requested variance from emission limitations, the Agency recommended certain conditions. Therefore this cause is remanded to the Board with directions to enter an order granting a variance in accordance with the views expressed herein subject to such conditions as are deemed appropriate.

Reversed and remanded with directions.

SCOTT, J., concurs.

Mr. JUSTICE BARRY, specially concurring:

I concur in the result declared in the majority opinion but not in all the reasoning and logic used to reach the result of a reversal and remand.

I believe that this case can be resolved on only one of the issues raised and that a detailed analysis of the Federal and State variance procedures and precedents is not required. I fully agree with the majority opinion in the conclusion that it was error for the Board to base its findings on the Agency's final 1974 report of ambient air quality, which report was not in evidence and was not published until after the hearing before the Pollution Control Board. The final 1974 report on ambient air quality was never a part of the record and was only filed in this court with the filing of the Pollution Control Board's brief. It is axiomatic that the petitioner here should have full opportunity to challenge, test, and possibly refute facts which form a basis of the administrative agency's adjudication. Allowing the Pollution Control Board to take judicial notice of this extra-judicial evidence denies petitioner's opportunity to be heard. Accordingly I

concur in the majority opinion's granting of the motion to expunge the final 1974 report from the record, but believe for that reason alone the decision of the Board should be reversed.

I also agree with the majority in remanding this cause to the Pollution Control Board to enter an order granting the requested variance after reconsideration of and subject to the Environmental Protection Agency's recommended conditions in granting the variance.