ILLINOIS ENVIRONMENTAL PROTECTION AGENCY, Petitioner, v. THE POLLUTION CONTROL BOARD et al., Respondents.

Third District   No. 80-368

Opinion filed April 28, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (George W. Wolff and Philip L. Willman, Assistant Attorneys General, of counsel), for petitioner.

David M. Strawn, of Davenport, Iowa, for respondent Mississippi River Grain Elevator, Inc.

Morton F. Dorothy, of Carbondale, for respondent Illinois Pollution Control Board.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The Environmental Protection Agency (hereinafter EPA) appeals from the decision and order of the Pollution Control Board (hereinafter PCB), wherein the PCB granted a variance to Mississippi River Grain Elevator, Inc. (hereinafter MRGE) from the PCB's Rules and Regulations governing grain handling facilities. MRGE had filed a petition (Ill. Rev. Stat. 1979, ch. 111½, pars. 1035, 1037) asking a variance from Rules 103(b), 203(d)(8)(B)(ii) and 203(d)(8)(B)(iv).

MRGE operates a grain storage and handling facility in Pekin, on the Illinois River. Rule 103(b) requires it to obtain an operating permit for the facility, while Rule 203 requires MRGE to install equipment to control particulate emissions at the truck-dump area and barge-loading area of their Pekin facility. MRGE was having design and cost difficulties in obtaining the necessary pollution control equipment to be in compliance, and it sought a variance because of an alleged unreasonable hardship in meeting compliance requirements.

In its petition, MRGE indicated its problems with obtaining good, workable equipment that would satisfy applicable requirements and also its commitment to obtaining such equipment at the earliest possible time. It sought a variance until January 15, 1981, at which time it felt the installation of the conforming equipment would be completed. The petition detailed the problems encountered with obtaining suitable equipment, due to the unique design of MRGE's barge loadout system, and it contained supporting documents from an equipment designer indicating the design and costs specifics with respect to the equipment MRGE intended to install. MRGE stated in its petition that installation of more common, standard pollution control equipment would give only sub-standard results at its facility. By amendment to its petition, MRGE waived a hearing on the variance request, pursuant to Rule 401(b) of the Board's Rules and Regulations, Chapter I (Procedural Rules).

The EPA, pursuant to statutory mandate, conducted an investigation into the petition, interviewed nearby residents of the facility and made a recommendation to the PCB. (Ill. Rev. Stat. 1979, ch. 111½, par. 1037.) The recommendation was that the variance petition, in its entirety, should be denied. The recommendation stated that the MRGE was not in compliance with PCB rules because it had not obtained an operating permit, nor had it installed air pollution control equipment. The EPA indicated that the MRGE facility in Pekin is in a nonattainment area for particulate emissions, as measured by applicable ambient air quality standards, and the Agency's data indicated that the particulate emissions from the facility would exceed allowable particulate emissions by a large amount. The recommendation concluded by stating to the PCB that it, the

PCB, *could not* grant a variance, because a variance was not shown to be consistent with the Clean Air Act and the State Implementation Plan adopted thereunder. The EPA recommendation also denied that MRGE would suffer any unreasonable hardship if it were forced to comply with applicable requirements immediately.

On May 1, 1980, the PCB entered its opinion and order granting to MRGE a variance from the applicable provisions of Rule 203, but denying the variance request as to Rule 103(b)'s operating permit requirement. As noted in a supplemental statement by the PCB's chairman, failure to grant the variance would have prevented MRGE from obtaining the construction permits necessary in order to come into compliance with other Board regulations. In its principal opinion, the PCB found that MRGE had met its burden of proof for the variance and that immediate compliance would impose an arbitrary and unreasonable hardship upon MRGE. The Board's opinion also stated that it was not clear whether their grant of the variance would prevent attainment of ambient air quality standards for particulate emissions in the Pekin area, and the opinion faulted the EPA for its failure to establish that violations would result if the variance were granted. The PCB's order, in pertinent part, required MRGE to take all reasonable steps to minimize particulate emissions with its existing equipment, and it set a January 15, 1981, limit on the effectiveness of the variance.

The EPA filed the instant appeal from the decision and order of the PCB. The EPA argues that the PCB erred in its grant of the variance. It argues that MRGE failed to meet its burden of proof in support of the variance petition. Specifically, the EPA argues that the petition was deficient (1) in that no showing was made that the variance would not prevent timely attainment and maintenance of applicable ambient air quality standards imposed by the Federal act and the State implementation plan; (2) in that no adequate showing was made of the (a) environmental impact of the variance, (b) the problems with past efforts at compliance, or (c) the intended measures to minimize impact of the variance; and (3) in that no sufficient showing was made establishing an arbitrary and unreasonable hardship upon MRGE in meeting compliance without the variance. The EPA argues that the PCB violated section 35 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1035) when it granted the variance without determining that the variance was consistent with the Clean Air Act's ambient air quality requirements and the enforcement of those requirements under and through the State implementation plan. The PCB, as appellee, argues that the petition filed by MRGE satisfied the relevant statutory and regulatory requirements that are imposed upon variance petitions and petitioners. It also contends that MRGE's petition satisfied the company's burden of proof in the

variance proceeding. Finally, the PCB asserts that there was no violation of section 35 of the Act where it was not established by the EPA that granting the variance would be inconsistent with ambient air quality requirements.

Petitioner MRGE does not argue the issues on this appeal. Their only submission is a letter to this court, from their manager of river operations, in which he correctly notes that the real dispute in this case is between the EPA and the PCB, with MRGE caught in the middle. The letter goes on to plead MRGE's good faith in the matter and the hardship it has suffered. It then commends the PCB's "common sense approach" to the problems in issue. After stating that MRGE feels victimized by the "intra-bureaucratic conflicts," the letter concludes by requesting that we dismiss the appeal.

■■ With this background in mind, we proceed to the issues raised on appeal. Section 35 of the Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1035) states:

"To the extent consistent with applicable provisions of * * *, the Clean Air Act as amended in 1977 (P.L. 95-95) * * *, and regulations pursuant thereto, * * *, the Board may grant individual variances beyond the limitations prescribed in this Act, whenever it is found, upon presentation of adequate proof, that compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship. In granting or denying a variance the Board shall file and publish a written opinion stating the facts and reasons leading to its decision."

Rule 401(d) of the PCB's Procedural Rules states:

"All petitions for variance from Title II of the Act or from Chapter 2, Air Pollution, of the Board's regulations *shall include* an analysis showing that the Board may grant the requested relief consistent with the Clean Air Act (42 U.S.C. §4701, *et seq.*) and the Federal regulations adopted pursuant thereto . . . If granting a variance would require revision of the State Implementation Plan, the petition shall show how the requirements of Section 110(a) of the Clean Air Act (42 U.S.C. §4701(a)) and 40 C.F.R. Part 51 will be satisfied." (Emphasis added.)

By virtue of section 37 of the Illinois Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1037) the burden of proof in variance proceedings is placed upon the petitioning party. (See *Caterpillar Tractor Co. v. Pollution Control Board* (1977), 48 Ill. App. 3d 655, 658-59, 363 N.E.2d 419.) This is reflected as well in the above-emphasized language of Rule 401(d) of the Board's Rules.

■■ Rule 401(b) of the Procedural Rules requires that if a petitioner waives the right to a hearing and the Board decides not to hold a hearing, as was the case in this proceeding, then the petition must be "accompanied by such affidavits and other proof in support of the material facts alleged

in the petition as the petitioner may submit, sufficient to enable the Board, if it so decides, to rule upon the petition without a hearing."

Rule 401(a) of the Board's Procedural Rules also sets forth pertinent requirements that must be met by a petitioner who is seeking a variance from Board Rules and Regulations. Such a petition must include:

"[A] factual statement why compliance with the Act and regulations was not or cannot be achieved by the required compliance date;" (Rule 401(a)(7)) and

"An assessment, with supporting factual information, of the environmental impact that the variance will impose on human, plant and animal life in the affected area, including, where applicable, data describing air and water quality which the discharge may affect;" (Rule 401(a)(7)) and

"Past efforts to achieve compliance including costs, incurred, results achieved, permit status * * *;" (Rule 401(a)(8)) and

"A statement of the measures to be undertaken during the period of the variance to minimize the impact of the discharge of contaminants on human, plant, and animal life in the affected area, including the numerical interim discharge limitations which can be achieved during the period of the variance." (Rule 401(a)(10).)

If a petition fails to satisfy these requirements, or those under Rule 401(d), above, "to the extent that the Board is not reasonably informed of petitioner's circumstances," then Rule 401(g) allows the Board to dismiss the petition for inadequacy.

The EPA argues that the MRGE variance petition was completely deficient as regards the supporting evidence and proof required under these Rules of the Board and the statutory requirements. It argues that the Board erred in failing to dismiss the petition for the obvious failures of the petition's supporting data.

■■ We agree. While recognizing that interpretation of its own rules and assessment of the sufficiency of supporting evidence are matters which must necessarily, in the first instance, rest within the discretion of the PCB itself, nevertheless, the PCB is not free to ignore those rules and regulations, or the underlying statutory sections, when it feels a correct result is achieved thereby. Our standard of review over actions of the PCB in granting or denying a variance is well delineated. As to the granting or denial of a variance, the supreme court has stated:

"This decision is essentially quasi-judicial, and, as such, must be supported by a written opinion with specific findings which are entitled to a presumption that they are *prima facie* true and correct. [Citation omitted.] Nevertheless, if the factual determinations of the Board, or of any administrative agency, are contrary to the manifest weight of the evidence, the reviewing court is

empowered to reverse the agency's findings." *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 289, 367 N.E.2d 684.

The deficiencies in MRGE's petition for a variance and therefore in the PCB's finding that the petition was sufficient center upon the required analysis concerning how the granting of the variance would affect the air quality in the area. Such an analysis and assessment is required under PCB Procedural Rules 401(a)(7) and 401(d), as well as under section 35's requirement that variances be consistent with the Clean Air Act. The Clean Air Act (42 U.S.C. §7401(a)), the regulations thereunder, and the State Implementation Plan adopted under the Act, provide for the establishment of ambient air quality standards for particulate emissions. As noted earlier, and as is not disputed, Pekin is in a nonattainment area for particulate emissions. Thus, the MRGE petition should have contained sufficient analysis, with supporting data, whereby the PCB could have determined whether the variance requested was consistent with the Clean Air Act and its air quality standards. Such an analysis, with supporting proof, should, necessarily, address the effect of the variance upon the ambient air quality standards for particulate emissions in the Pekin area. Only after an assessment of these matters could the PCB have made a reasoned and informed judgment on whether granting the variance was consistent with the requirements and standards of the Clean Air Act, as required by section 35. Without such an analysis, with its supporting data, the Board had no sufficient record or basis upon which to rule upon the variance petition. Its own rules, in cases where a hearing is waived, require petitions to be accompanied by affidavits and other proof, in support of the material allegations, sufficient to enable the Board to rule upon the petition. (Procedural Rule 401(b).) The MRGE petition in this case failed to include such analysis or assessment, and totally failed to provide supporting data on the issue.

The only "analysis" or "proof" offered by MRGE with respect to the environmental impact of the variance and its relation to ambient air quality standards were the following statements, contained in the petition:

> "The quantity and type of 'contaminants' discharged is very liberally and (not professionally) estimated at 10-20 pounds of *grain dust* per day. By virtue of the nature of this product handled: grain dust apparently has no adverse effect on humans or property but is none the less a real part of grain handling.
>
> ❋ ❋ ❋
>
> A grant of the variance that is requested in this petition would impose absolutely no injury, inconvenience, or hardship of any kind upon the public. This operation as is now being conducted has received *no complaints* whatsoever of fugitive emission or any

other public nuisance factors from the public including next door residential neighbors."

The PCB found these statements to satisfy the petitioner's burden of proof and also, by implication, sufficient for it to make the determination required of it under section 35 of the Act. We do not.

As to the conclusory assertion that grain dust has no adverse effect on humans, it must be noted, first, that no support in any form is provided in the petition. Secondly, the EPA, under congressional guidance, has determined to the contrary, that grain dust is a potentially hazardous particulate matter which, with other particulates, must be controlled in order to minimize its effect on the public. If it were not so, grain dust would not be in the list of contaminants to which the Clean Air Act has been applied. That MRGE does not view the grain dust emitted by its facility as a contaminant does not change the law and regulations adopted thereunder. As to the conclusion on page 4 of the petition that the variance would impose absolutely no injury, inconvenience or hardship on the public, that too is an unsubstantiated conclusion without supporting data. The only data or proof supplied by the MRGE petition is the admittedly unprofessional assessment that the facility emits 10-20 pounds of grain dust per day. No support for this admittedly guesswork figure, or any other indication of its validity, is found in the petition or supporting documents. Even the PCB, in its opinion on the variance, recognized the unsubstantiated nature of the petition's conclusions on these important matters of concern. Nevertheless, it granted the petition. In so doing, it chose to fault the EPA for not conclusively showing a violation of ambient air quality standards and thereby effectively removed the burden of proof from MRGE, where it, by statute and regulation, belonged.

We note that it is the PCB which rules on variance petitions and, by statute, it is the PCB which must determine the consistency or inconsistency of any variance petition with the Clean Air Act requirements. The PCB may not avoid that responsibility by pointing an accusing finger at an inadequate presentation by the EPA. The burden is not upon the EPA to show an inconsistency. Rather, the burden is upon petitioners to show consistency between their variance petition and the Clean Air Act. The burden is upon the PCB to see that adequate information is provided so that the Board may make an informed determination as to how the variance will fit within regulatory requirements under the Act.

Given the complete failure of MRGE to substantiate its scanty conclusions as to the effect of the variance on ambient air quality in the area, the petition failed to meet Rule 401(a)'s requirement that a petition contain an assessment, with supporting factual information, of the environmental impact that a variance will impose on human, plant and animal life in the area. More significantly, the petition failed to meet the requirement

of Rule 401(d), based upon section 35 of the Act, that a petition include an analysis showing that the Board may grant the relief requested consistent with the Clean Air Act and the regulations adopted thereunder. The petition was also deficient in failing to state what measures would be undertaken by MRGE during the period of the variance to minimize the impact of the discharge of contaminants, as required under Rule 401(a)(10). Accordingly, because of the failure of the petition to provide required and necessary supporting factual data, the PCB, on its own motion, could properly have dismissed the petition as inadequate. There was not enough information supplied in it or in supporting documents so as to reasonably inform the PCB of MRGE's circumstances or the impact of the variance on air quality. There was not enough information or support provided to enable the PCB to make the determination required by section 35. In concluding otherwise, the PCB was in error. The PCB's findings of fact, on the question of the sufficiency of the supporting factual information and as to the impact of the variance on air quality in the area, are not supported in the record and are contrary to the manifest weight of the evidence. Its order, granting the variance, therefore, should be reversed.

As to the other requirements set forth by Procedural Rule 401(a), we find no error in the PCB's actions on the petition. It did contain statements and evidence on MRGE's problems with past compliance and on its past efforts toward compliance. There was sufficient evidence presented so as to reasonably inform the PCB of MRGE's circumstances on these matters. Nor do we find error in the conclusion by the PCB, based upon evidence submitted, that MRGE had shown a reasonable hardship which would entitle them to a variance, had the petition met the minimum requirements with respect to the effect of the variance upon air quality. As noted above, the entire problem with the petition and with the PCB's conclusion that MRGE had met its burden of proof centers upon the lack of competent data or analysis on the environmental impact of the variance. The petition failed to meet the Board's own rules and regulations and the requirements of section 35; and the PCB had no sufficient basis upon which to determine that the granting of the variance would not adversely affect the environment. Had the EPA presentation supplied supporting evidence indicating no violation or adverse impact, then the PCB's action would have been supported. The agency's data, however, indicated the contrary, and, according to the PCB, was unclear and questionable. Faced with a totally inadequate petition and an equally inadequate record, the PCB, rather than granting the variance, could have dismissed the petition and thereby required that further analysis and evaluation be done in order that it might have available sufficient evidence to make the necessary determinations. The PCB's attempt to

place upon the EPA the burden of showing a lack of compliance with ambient air quality standards in variance proceedings goes directly against the applicable statutory sections and the Board's own procedural rules, both of which place the burden of proof on the petitioner in a variance proceeding. As a matter of law, MRGE's petition failed to meet the burden.

■■ The underlying background of this case is evident between the lines. It is a case where two governmental agencies, both charged with similar duties and responsibilities, found themselves in an antagonistic posture toward each other. The EPA, in no uncertain terms, told the PCB what the limits of its power were in this case, obviously not welcome to the PCB. The PCB was obviously convinced, as well, that MRGE was seeking good faith compliance and was in good faith in requesting a variance until it could obtain and install effective pollution control equipment. Therefore, in extension of its own Procedural Rules and of statutory requirements, the PCB entered an order which found for MRGE, and against the EPA. To a very large extent, as its letter to this court points out, MRGE has been caught in the middle of an intra-agency disagreement. Despite that, however, the fact is that MRGE's petition was deficient for failing to include necessary supporting data and analysis concerning the impact of the variance on air quality in the area.

Had proper action been taken by the PCB at the time, then MRGE would, at least, have had the opportunity to gather and analyze the necessary data and then resubmit its request for a variance. By failing to dismiss the petition for lack of supporting data, the PCB, in effect, deprived MRGE of that opportunity and, though the PCB's action was well-intentioned as to MRGE, it may have also jeopardized MRGE's position in enforcement actions. That the PCB granted the variance, in part because of the legitimate hardship to MRGE and also, in part, because of a conflict with the EPA, does not lessen the prejudice to MRGE in the way the matter has been handled. Therefore, and in consideration of the unfairness to MRGE in the handling of the matter, while we reverse the grant of the variance, we also remand and direct that MRGE be permitted to refile its variance petition, with supporting data and analysis, within a reasonable time of the issuance of our mandate, as set by the PCB.

Even if a variance is not ultimately obtained, no enforcement action based upon MRGE's failure to comply with requirements of Rule 203 would seem appropriate.

Because of our disposition of the matter on the issue of compliance with the Board's Procedural Rules, and our remandmant to the PCB for potential further proceedings, we need not, at this time, decide other questions raised on the appeal.

The decision of the Pollution Control Board in this case is reversed and the cause is remanded with directions to proceed in accord with the views expressed in this opinion.

Reversed and remanded, with directions.

STOUDER and BARRY, JJ., concur.